## STATE OF MICHIGAN
## IN PRIVATE ARBITRATION

**STONEBRIDGE EQUITY LLC,**
**d/b/a STONEBRIDGE BUSINESS**
**PARTNERS,** a Michigan limited
liability company,

        Claimant,                              Gene J. Esshaki
                                                  Arbitrator

vs.

**CHINA AUTOMOTIVE SYSTEMS, INC.,**
a Delaware corporation,

        Respondent.

                                                            /

| | |
|---|---|
| Randall J. Gillary (P 29905) | Mark V. Heusel (P 47528) |
| Kevin P. Albus (P 53668) | DICKINSON WRIGHT, PLLC |
| RANDALL J. GILLARY, P.C. | Attorneys for Respondent |
| Attorneys for Claimant | 301 East Liberty Street, Suite 500 |
| 201 W. Big Beaver Road, Suite 1020 | Ann Arbor, Michigan 48104 |
| Troy, Michigan 48084 | (734) 623-1908 |
| (248) 528-0440 | |

                                                                             /

## PARTIAL AWARD NUMBER ONE

      This matter was brought on for hearing before the undersigned, the duly appointed Arbitrator of the parties, on November 30, 2010. The hearing was conducted at the offices of the undersigned located at 300 River Place, Suite 3000, Detroit, Michigan 48207. The hearing commenced at approximately 9:00 a.m. and concluded at approximately 5:30 p.m. on November 30, 2010.

      The Claimant in this matter, Stonebridge Equity LLC, d/b/a Stonebridge Business Partners, ("SBP") a Michigan limited liability company, was represented at the hearing by

Randall J. Gillary, Esq. of Randall J. Gillary, P.C.  Respondent, China Automotive Systems, Inc.,
("CAS") a Delaware corporation, was represented by Mark V. Heusel, Esq. of Dickinson Wright,
PLLC.

At the start of the hearings, the parties stipulated that all of the exhibits contained in their
Joint Exhibit Book, consisting of Exhibits 1 through 78, inclusive, would be admitted as
evidence in the proceedings.  Based upon the stipulation, Exhibits 1 through 78, inclusive, were
admitted.

During its case in chief, SBP called Dr. Haimian Cai of CAS and Mr. Rex Struble, SBP's
principal.  CAS called Dr. Cai in its case in chief.  Each witness was placed under oath by the
undersigned.  Each side was permitted to cross-examine the other side's witnesses.  At the
conclusion of the testimony, both sides confirmed that they had rested their cases.

The parties reserved the right to file post-hearing statements, not exceeding 15 pages in
length and containing proposed findings of fact and conclusions of law.  The statements were
filed with the undersigned and served upon opposing counsel on December 20, 2010.

Having reviewed the documentary exhibits presented and received the testimony of the
parties' witnesses, and having been afforded an opportunity to judge the credibility of such
witnesses, and, finally, having considered both the pre- and post-hearing statements of the
parties, the undersigned does hereby submit this as his Partial Award Number One:

## PROCEDURAL HISTORY

This matter was originally commenced by SBP in the United States District Court for the
Eastern District of Michigan, Southern Division, being Case No. 2:09-cv-11541.  CAS filed a
Motion to Dismiss Plaintiff's First Amended Complaint based upon an arbitration clause
contained in the contract that is the subject matter of these proceedings.

On September 21, 2009, the parties executed a formal Arbitration Agreement governing these proceedings that also resulted in a dismissal of the action previously pending in the United States District Court.   A copy of the parties' Arbitration Agreement is attached hereto and incorporated herein by this reference.

The undersigned was selected by the parties as the sole Arbitrator in these proceedings and has previously executed an Oath of Office.

## STATEMENT OF DISPUTE

The parties entered into an Engagement Agreement:   Business Development Services, dated April 1, 2008 (Exhibit 8) (all references shall be to the exhibits set forth in the Joint Exhibit Book).   Exhibit 8 is so fundamental to the relationship of the parties that a copy of it is being attached hereto and incorporated herein by this reference.

As provided in Exhibit 8, Claimant was engaged by Respondent to focus on providing Respondent with business development services to help Respondent identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe.

Under the section entitled "Fees & Expenses," Plaintiff was to be compensated for its services under the Engagement Agreement as follows:

1. <u>Retainer Fee</u>:   CAS agrees to pay SBP a monthly retainer fee equal to $5,000 per month for six months beginning immediately upon signing this Agreement.

2. <u>Success Fee</u>:

   <u>A.</u> If CAS successfully signs a purchase order which is procured by SBP, solicited by SBP or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is

3

identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers.  Plus;

B.  If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer.  CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified.  Plus;

C.  If CAS successfully closes a business transaction other than direct customer sales such as strategic partnerships, joint ventures, technology licensing, or any other form of business combinations or value transfer whereby SBP identified the opportunity and/or guided the transactional process through necessary strategic advisory and consulting services, then CAS agrees to also pay SBP a success fee amount equal to 1.5% of the transaction value of such business transaction or a minimum success fee equal to $50,000 whichever is greater.

D.  Payment due under Section A and B shall be the 30th day after the payments are collected from the customers.  Payment due under Section C shall be the 30th day after the closing of the transaction.

3. Out of pocket expenses:  During the Term of this engagement, CAS shall reimburse SBP for project related expenses including travel expenses when pre-approved on a case by case basis.  CAS shall pay SBP an upfront project expense budget equal to an amount of $2,000 to reimburse SBP for its purchase of market data.

4. Other Payment:  The pre-approved project budget shall be immediately payable upon signing this agreement.  The monthly retainer fees shall be payable at the end of each month relating to this agreement for six consecutive months.  For example, the first monthly retainer fee shall be payable on April 30 2008 followed by five additional monthly retainer fee payments in roughly 30 day increments.

In its Complaint, SBP asserts a right to recover fees and expenses from CAS pursuant to the Engagement Agreement as follows:

1.  Chrysler Contract / Five Percent Commission on J/K Parts.  SBP asserts that it was instrumental in assisting with the award of a contract by Chrysler Corporation

4

to CAS covering certain parts to be manufactured by CAS and sold to Chrysler for the J/K vehicle. During the hearing the parts at issue were commonly referred to as "the power steering gear assembly for the left hand and right hand long wheel base vehicle (four door vehicles) and the power steering gear assembly for the left hand and right hand short wheel base vehicle (two door vehicles)." (The J/K contract is located at Exhibits 53 and 54 in the Joint Exhibit Book.) Under Section 2. A. of the Engagement Agreement, SBP seeks a commission equal to 5% of the gross margin as defined in the Agreement on the sale of all such parts to Chrysler.

      2.      <u>Chrysler Contract / Success Fee on the J/K Parts</u>.  SBP also seeks an award of commissions from CAS as provided in Section 2. B. of the Engagement Agreement equal to 40% of the "excessive amount," as defined in that section as the difference between the actual price and the target price established for each part, on all right hand and left hand gear assembly parts for the long wheel base vehicle and the right hand and left hand gear assembly parts for the short wheel base vehicle limited to the J/K vehicle contracts.

      3.      <u>Chrysler Contract / Five Percent Commission on D/J Parts</u>.  SBP also asserts that it was instrumental in assisting with the award of a contract by Chrysler Corporation to CAS covering certain parts to be manufactured by CAS and sold to Chrysler for the D/J vehicle. During the hearing the parts at issue were commonly referred to as "1. DJ Parts; 2. DJ/D2 Parts; 3. DD/DX3 Parts and 4. DD Parts." The DJ contracts were issued by Chrysler to CAS on July 10, 2009. Under Section 2. A. of the Engagement Agreement, SBP seeks a commission equal to 5% of the gross margin as defined in the Agreement on the sale of all such D/J parts to Chrysler.

4.      <u>Chrysler Contract / Success Fee on the D/J Parts</u>.  SBP also seeks an award of commissions from CAS as provided in Section 2. B. of the Engagement Agreement equal to 40% of the "excessive amount," as defined in that section as the difference between the actual price and the target price established for each part, on all D/J parts sold or to be sold by CAS to Chrysler.  The parties acknowledged that the sales of these parts were for the 2011 models and that production was just commencing at the date of the hearings so no actual sale numbers are available.

5.      <u>De Amertek Fee</u>.  Finally, SBP asserted a right to a success fee equal to $50,000 under the Engagement Agreement, <u>Section 2.   Success Fee: C.</u> for being instrumental in the establishment of a Joint Development Agreement between CAS and De Amertek, see Exhibit 59.  This success fee stands on its own and has no relation to the commission fees and success fees being claimed by SBP on the Chrysler J/K and D/J part contracts as described in Sections 1-4 above.

## STATEMENT OF FACTS

Despite a full day of testimony by two witnesses that were each subject to direct and cross-examination, and the introduction of 78 documentary exhibits consisting of hundreds of pages of documents, there is little, if any, factual dispute between these parties.

The parties agree that SBP was retained by CAS pursuant to Exhibit 8, the Engagement Agreement for Business Development Services.  Under Exhibit 8, SBP had three obligations to CAS. These obligations included:

1.      <u>Marketing Report</u>.  SBP was to prepare a thorough marketing report analyzing the global steering system marketplace, the position of CAS in that

marketplace and how CAS could exploit its position with customers and strategic partners to increase its sales.

   2.      SBP was to assist CAS in procuring and soliciting the sales of products of CAS and was also to direct its efforts to improving target prices for products of CAS.

   3.      SBP was to identify strategic partners, joint ventures, technology licensing and other forms of business combination or value transfers for CAS in the global steering systems marketplace.

The parties do not dispute that during the course of the engagement, SBP produced the marketplace study required of it, identified, directed and assisted in the establishment of a potential strategic partnership and, finally, assisted CAS in the pricing strategy utilized with Chrysler Corporation over the J/K and D/J parts.

The parties differ on whether SBP is entitled to any compensation above its monthly retainer, that was due and payable for six months and was in fact paid by CAS, for the efforts it expended under the Engagement Agreement.

The question of whether SBP is entitled to any success fee compensation referenced in the Engagement Agreement will turn upon the language of the Agreement, as well as the conduct of the parties.

## POSITION OF THE PARTIES

SBP Position.   SBP argues that it is entitled to success fee compensation on both J/K parts and the D/J parts being sold by CAS to Chrysler because, at the request of CAS, SBP became intimately involved in a pricing strategy that resulted in CAS obtaining a price increase on the J/K parts, as well as locking down the order on the D/J parts through the SBP strategy of bundling the prices on those parts with the J/K parts.  SBP argues that at the point it was

requested by CAS to become involved in the Chrysler pricing strategy, a serious pricing dispute existed between CAS and Chrysler which would have jeopardized the final award of the J/K parts contracts. Further, SBP argues that in a strategy first conceived by SBP, the pricing on the D/J parts contracts were bundled with the pricing on the J/K parts contracts and ultimately both pricing strategies were accepted by Chrysler resulting in (a) saving the J/K parts contract for CAS; and (b) obtaining the final award of the D/J parts contracts from Chrysler for CAS.

Finally, in its pre-hearing statement SBP made claim for a $50,000 success fee as a result of bringing together CAS and an entity known as De Amertek, a U.S. corporation located in Oakbrook, Illinois. SBP argues that it introduced CAS to De Amertek and that it participated in what ultimately became a Memorandum of Understanding between the two entities. See Exhibit 59. Under the expressed terms of the Engagement Agreement, SBP identified the strategic partner and guided the parties through to a written Memorandum of Understanding which entitled it to a success fee.

CAS Position. In defense of these claims, CAS argues that SBP's obligation under the Engagement Agreement was to "focus on providing CAS with business development services to help (CAS) identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe." CAS argues that it was working with Chrysler Corporation and in fact had received a purchase order, although not complete as to terms, on the J/K parts it is currently supplying to Chrysler Corporation prior to even engaging SBP under Exhibit 8. CAS further argues that the language of Section 2 of the Engagement Agreement limits success fee compensation to SBP to those sales it procured or solicited on behalf of CAS to new clients and because CAS was already working with Chrysler Corporation

prior to entering into the Engagement Agreement, the efforts of SBP in participating in the pricing strategy did not result in SBP becoming entitled to any success fee compensation.

Finally, CAS argues that while SBP in fact identified and assisted in guiding the De Amertek transaction leading to the Memorandum of Understanding (Exhibit 59), ultimately, the joint venture product development anticipated in Exhibit 59 did not come to fruition as the development efforts failed to produce a marketable product and no value was generated out of this relationship.

## ANALYSIS

The question of whether SBP is entitled to any success fee compensation under the terms of the Engagement Agreement rests squarely upon the proper determination of the parties' intent under such Section. As indicated, CAS argues that under the Engagement Agreement, SBP was limited to soliciting and procuring business from new customers. In opposition, SBP argues that its efforts in participating in the pricing strategy involving Chrysler Corporation resulted in the final part purchase order being issued on the J/K parts and through the bundling of the price concept, ensured that CAS received an award of the D/J parts contracts as well.

In reviewing Exhibit 8, I find, as a matter of law, that the contract is ambiguous. This ambiguity arises for several reasons. Initially, the introductory paragraph of the contract limits the activities of SBP to pursuing new customers and strategic partners. That provision, however, is not carried forward in Section 2. A. governing a commission for success fees on sales procured, solicited or pursued by SBP. Further, I find an ambiguity exists in the contract between the language of Section 2. A. and 2. B. While 2. A. is limited to purchase orders procured, solicited or pursued by SBP during the term of the engagement, Section 2. B. indicates SBP would be entitled to a success fee for procurement, solicitation "and/or effort" of SBP. The

language of Section 2. B. is dramatically different than the language of Section 2. A. in that 2. A. clearly identifies that the purchase order is to be procured, solicited or pursued by SBP, while the language of 2. B. indicates success compensation can be awarded for improving the final price of a contract that was procured, solicited or resulted from any effort of SBP.

During the proceedings, CAS introduced copies of prior drafts of the engagement letter. Curiously, the initial draft dated January 7, 2008 (Exhibit 3) contains a reference to new customer sales in both the introductory paragraph and the success fee compensation paragraph, Section 2. In the second draft of the contract dated March 1, 2008, the reference to new customer sales is continued in the success fee paragraph of the Agreement, Section 2. It is also curious to note that in both the first and second draft of the contracts, the total success fee language is set forth in one paragraph of the Agreement.

When Exhibit 8 is executed between the parties, any reference to new customer sales has been removed from the success fee section of the contract. Also, the success fee language is now broken down into three different subsections. There is no indication that subsection B., governing success commissions for target price improvements, has any relationship to subsection A. governing percent commission on gross margins for purchase orders procured, solicited or pursued by SBP.

As I read the language of Section 2.A., SBP would be entitled to a 5% commission on gross margin for all purchase orders which it procured, solicited or pursued during the term of the engagement for the benefit of CAS. On the other hand, I read Section 2. B. of the Agreement to provide that SBP is entitled to a commission of 40% of the amount by which the actual purchase order price exceeds the target price between CAS and its customer. The language does

not limit SBP to the procurement, solicitation or orders pursued by SBP during the term of the engagement, but extends to "efforts of SBP" which impact the final price.

While Section 2. A. describes the sales commission that SBP would receive for orders it procured, solicited or pursued and adds "plus;" I do not read that word as providing that the excess price commission shall be limited only to those orders referenced in Section 2. A.  I reached this conclusion because Section 2. B. also contains at the end "plus;" and then goes on to describe the success fee for a business transaction.  Clearly, subsection C. has nothing to do with A. or B.  Accordingly, the "plus" does not limit the application of subsection C. or subsection B. to sales referenced in subsection A. as procured, solicited or pursued by SBP.  Accordingly, I conclude that the language of Section 2. B. permits SBP to claim a commission for excess price in any situation where its efforts contributed to obtaining that excess price.

## APPLICATION OF CONTRACT TO FACTS

I conclude that the testimony of both sides was clear and uncontroverted.  SBP did not procure, solicit or pursue the J/K parts purchase orders issued by Chrysler Corporation to CAS.

Further, I conclude that the activities of SBP in linking the pricing on the D/J parts to the pricing on the J/K parts does not rise to the level of procuring, soliciting or pursuing the purchase orders for the D/J parts from Chrysler to CAS.

On the other hand, I find that the efforts of SBP in participating in the pricing strategy involving the J/K parts and the D/J parts constitute "and/or effort of SBP" in enhancing the target price.

There was documentary evidence introduced at the hearing that the target price was set at $120 on these parts.  There was no evidence in documentary form that contradicted this was

actually the agreed upon target price.  Accordingly, I conclude that $120 was the established target price on all of the parts.

Exhibits 53 and 54 establish that the final awarded price on the J/K parts were $121.86. Under the terms of Section 2. B. of the Engagement Agreement, I find that SBP is entitled to a commission equal to 40% of the amount by which the actual awarded price ($121.86) exceeds the targeted price ($120.00).  Accordingly, SBP is entitled to a commission of $0.744 on all J/K parts sold or to be sold by CAS to Chrysler Corporation. ($1.86 x 0.40 = $0.744)

As to the D/J parts, I find that once again the target price was $120.  Based upon the testimony introduced at the hearings, I also find that the final bid price was $119.90 or 10¢ under the target price.  Finally, while the award price set forth in the D/J purchase order (Exhibit 63) is $127.80, testimony established that the price increased not as a result of any efforts by SBP to increase the final price over the target price, but as a result of passing along increased manufacturing costs and currency fluctuations that were recognized by Chrysler Corporation from CAS.

Accordingly, I find that SBP is not entitled to any commissions due on the D/J parts because its efforts did not assist in capturing a final price over the targeted price after consideration of normal cost increases between the date of the quote and the final contract award.

Finally, during the hearing, SBP conceded that while its efforts led to the Memorandum of Understanding executed between CAS and De Amertek, there is no evidence that this Memorandum led to any product that was ultimately sold by the venture.  SBP conceded in its case that since no sales were generated and no profits produced to date, SBP was not entitled to a success fee under the Engagement Agreement.

## CONCLUSION

I hereby find as follows:

1.    <u>Success Fee J/K Parts Contracts</u>.  SBP is entitled to a success fee commission equal to $0.744 on each part sold or to be sold by CAS to Chrysler corporation for the J/K parts contracts.

2.    <u>Other Commission Claims</u>.  All other commission claims by SBP against CAS, specifically including the 5% margin claims on the J/K contracts and the D/J contracts and the excess price commission claim on the D/J contracts, are hereby denied.

3.    <u>De Amertek</u>.  I find that since the Memorandum of Understanding solicited by SBP for CAS did not result in the exchange of any value, the sale of any product, gross receipts or any profits to date, SBP is not entitled to the success fee it sought under Section 2. C. of the Engagement Agreement.  This ruling will not bar any claim by SBP for a future relationship that arises between CAS and De Amertek that results in product sales and development or some other exchange of value or profit that can be traced to the introduction of De Amertek to CAS by SBP.

4.    <u>Penalties and Fees</u>.  Based upon the evidence presented, it is not possible to calculate the commission amount due from CAS to SBP for the excess price success fee awarded in this Partial Award.  Since the penalty under the manufacturers representative statute is based, in part, on the Award, the undersigned will require this information before addressing the penalty issue.  Further, the legal fee provision under the statute requires that any fee award must bear some rational relationship to the commission and penalty awarded on the claim.  If the parties are able to agree upon a commission amount due under this Partial Award and submit the same by stipulation to the undersigned, the issue of the penalties and attorney fees will be resolved by a

subsequent award.   If no Stipulation can be reached, an additional brief hearing will be scheduled.

5.     <u>Other Claims and Defenses.</u>   All other claims or defenses of either party not specifically addressed herein are denied in their entirety.

6.     <u>Costs.</u>   The costs of these proceedings, specifically including the fees of the undersigned, shall be borne by the parties as incurred.

December 28   , 2010

Gene J. Esshaki, Arbitrator

252332

Sep 23 09 05:25p    Rex R Struble    877 693-2168    p.1

## ARBITRATION AGREEMENT

This arbitration agreement ("Agreement") is entered into by and between Stonebridge Equity, LLC ("Stonebridge") and China Automotive Systems, Inc. ("China Automotive") September ___21___, 2009.

## RECITALS

1.    On May 12, 2008, Stonebridge and China Automotive entered into a business development services contract ("Contract") under which Stonebridge was to provide business development services to China Automotive in exchange for a fee.

2.    The Contract contained an arbitration clause requiring the parties to submit any dispute arising under the Contract to arbitration.

3.    Although Stonebridge filed suit against China Automotive, alleging breach of the Contract, in the Eastern District of Michigan, the parties are agreeable to arbitrating this matter in accordance with this Agreement.

4.    That case, Civil Action Number 09-11541, is currently pending before Judge Denise Page Hood.

NOW, THEREFORE, based on the foregoing Recitals which the parties accept as true and as part of the basis for this Agreement, and in consideration of the representations, warranties, and promises in this Agreement, and reliance thereon, the parties agree that:

## SECTION I
## AGREEMENT TO ARBITRATE

1.1    The parties shall submit to binding private arbitration all claims contained in Civil Action Number 09-11541.

1.2    The parties shall also submit to binding arbitration all claims, whether common-law or statutory, arising under the Contract.

1.3    Any party's failure to bring claims, whether common-law or statutory, arising under the Contract in the arbitration will result in that party waiving the right to bring those claims in any forum.

1.4    The AAA's Commercial Arbitration Rules effective June 1, 2009, unless otherwise modified by this Agreement, will govern the arbitration..

1.5    The parties specifically agree that no filing fees or other fees shall be required to be paid to the American Arbitration Association or to any other organization relative to the arbitration in this matter. The fees for the arbitrator shall be paid by the parties directly to the arbitrator.

234593v1

## SECTION II
## SELECTION OF ARBITRATOR

2.1     The parties will, within fourteen days of executing this Agreement, submit three proposed arbitrators to decide the dispute. Within five days thereafter, the parties will confer and choose one arbitrator from that list.

2.2     If the parties cannot agree to one arbitrator from that list, the parties will have ten days to name five different proposed arbitrators and confer regarding that list.

2.3     If the parties still cannot agree to one arbitrator, then either party may request that Judge Denise Page Hood select the arbitrator.

## SECTION III
## HEARING

3.1     The arbitration hearing shall be held within 150 days after the parties have selected an arbitrator and held their first preliminary hearing conference. The hearing shall be recorded and transcribed by a legal court reporting firm, and the costs shared equally by the parties.

3.2     The parties and arbitrator will mutually agree to a date and place for the hearing.

3.3     If the parties and the arbitrator cannot mutually agree to a date and place for the hearing, the arbitrator shall select the date and place.

3.4     The parties may present witnesses testimony at the hearing either in person, by video conference or by video deposition.

3.5     The Federal Rules of Evidence shall be used as a guide during the hearing but the arbitrator shall not be bound to strictly follow the Federal Rules of Evidence.

## SECTION IV
## CONDUCT OF PROCEEDING

4.1     Discovery shall close in this proceeding 30 days prior to the scheduled hearing date. To the extent that the parties have expert witnesses, their testimony may be taken after this date according to the mutual agreement of the parties.

4.2     The parties shall each be entitled to take up to three discovery depositions during the proceeding.

4.3     The parties shall be permitted to request documents and serve no more than 25 interrogatory questions to the other party, including sub-parts.

4.4     Either party shall have the right to request that the arbitrator allow additional discovery for reasonable cause.

234593v1

## SECTION V
## MISCELLANEOUS

5.1  **Dismissal Without Prejudice of Civil Action:** The parties will cause a stipulated order to be entered in the District Court dismissing the Civil Action without prejudice pending arbitration of the parties' claim. The order shall provide that the Court will retain jurisdiction for the enforcement of this Arbitration Agreement, and the for the confirmation, vacation, or correction of the arbitration award in accordance with this Arbitration Agreement and the Federal Arbitration Act. 9 U.S.C. § 1 et seq. In the event that the arbitration award is satisfied prior to confirmation of the award in a judgment, the parties will cause to be entered a stipulated order for dismissal with prejudice and without costs.

5.2  **Attorneys' Fees and Costs:** The parties agree that each party shall bear its own costs and attorneys' fees, if any, during the course of the arbitration, including the costs and fees of the arbitrator. The Arbitrator shall have the authority to award reasonable attorney fees and costs (including arbitration fees) to either party.

5.3  **Finality of Award:** Subject to the right to appeal as set forth in this Section, any award by the arbitrator (or the appeal arbitrator, if applicable) shall be final and conclusive upon the parties and a judgment may be entered in the Circuit Court or United States District Court having jurisdiction for the forum. After the entry of an arbitral award, either party shall have thirty (30) days after it receives notice of the award to fully comply with the award; a judgment may not be entered to enforce the award until the parties have had an opportunity to comply with the arbitral award according to this provision.

5.3.1  Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, but only if notice of appeal is served by the appealing party on the opposing party within 30 days after the date of the decision of the hearing arbitrator is mailed to the parties. Service shall be deemed completed upon receipt of the notice of appeal by the opposing party. The hearing arbitrator's award shall therefore not become final and binding until this period has lapsed without a notice of appeal being served.

5.3.2  If a notice of appeal is filed, then the parties shall appoint an arbitrator in the same manner as described in Section II to serve as the appeal arbitrator. The appeal arbitrator may not take new evidence, but shall consider briefs and oral argument of counsel, as well as the written record of the hearing (if one exists). The standard of review shall be the same as if the matter were appealed to a Michigan appellate court. The appeal arbitrator shall render its decision and ruling in writing within 30 days of the close of oral arguments. The appeal arbitrator's ruling shall be final and binding and subject to reversal only as allowed by the standards set forth in the Federal Arbitration Act.

5.4  **Amendments and Modifications:** This Agreement may be amended or modified only by a writing identified on its face as an amendment to this Agreement signed by the parties.

234593v1

5.5   **Integration:**   This Agreement is the final and complete agreement of the parties with regard to the subject matter described herein. All prior written and oral negotiations, representations, and agreements pertaining to this Agreement are superseded by and merged into this Agreement.

Stonebridge Equity, LLC

By: _____

Its: *Managing Partner*

Dated: *9-23-2009*

China Automotive Systems, Inc.

By: _____

Its: _____CHAIRMAN_____

Dated: _9-21-2009_

234593v1



**Stonebridge**
**b u s i n e s s  P a r t n e r s**

363 W. Big Beaver, Su
Troy, Michigan
Phone: 248-24(
Fax: 877-69:
E-mail: info@SB-BusinessPartne
www.SB-BusinessPartne

April 1st, 2008

Mr. Hanlin Chen, Chairman
China Automotive Systems, Inc.
No. 1 Henglong Road, Yuqiao Development Zone
Shashi District, Jing Zhou City
Hubei Province 434000
Peoples Republic of China

**SUBJECT:  Engagement Agreement:  Business Development Services**

Dear Mr. Chen:

In follow up to our recent meeting in Troy Michigan, this engagement agreement ("Agreement") is designed to focus on providing CAS with business development services to help you to identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe.

We understand that China Automotive Systems, Inc. (Collectively, CAS) has decided to pursue sales and business development opportunities in North America and Europe. Furthermore, CAS would like to engage Stonebridge Equity LLC (Stonebridge Business Partners – dba) (collectively, SBP) as your advisor for these efforts subject to the terms and conditions set forth in this Agreement.

This letter confirms our intention and commitment to provide services to CAS and it outlines our scope of work, terms of engagement, and project milestones and deliverables. This letter also confirms CAS commitment to provide SBP with company information, to provide SBP with approval to have discussions with customers/partners and to pay SBP for these services as described in this Agreement.

**Key Deliverables**

Within ninety (90) days of entering into this Agreement, SBP will provide CAS with a written report which addresses each of the following three categories:

1 ) **Competitive Assessment:**  SBP will research the competitive position of CAS within the global steering systems marketplace and provide an assessment of CAS's strengths and weaknesses together with a brief profile of each major competitor in the market.

2) **Customer Opportunities:**  SBP will conduct a market analysis and provide CAS with lead generation services to identify sales opportunities which may be available for new steering system suppliers to enter into the supply base of the passenger car and commercial truck original equipment manufactures of vehicles.

3) **Strategic Partnering:**  SBP will research potential strategic partners to identify joint venture and or acquisition opportunities and or technology licensing opportunities for CAS to consider within the passenger car and commercial truck original equipment manufactures market.





**EXHIBIT**

_____ 1



Stonebridge
B u s i n e s s   P a r t n e r s

363 W. Big Beaver, Suit
Troy, Michigan ⁴
Phone: 248-246·
Fax: 877-693·
E-mail: info@SB-BusinessPartner:
www.SB-BusinessPartner:

### Duration of Project/Engagement

<u>Duration of Engagement</u>: This Agreement shall be in effect for a period of six months ("Term"). The parties may discuss whether or not to renew the engagement in the last third (30) days prior to the expiration of the Duration of Engagement. This Agreement shall not be terminated prior to its natural expiration of the Duration of Engagement. The Success Fee's as described in Section 2 of Fee's & Expenses below shall survive the natural expiration of this Agreement.

### Fees & Expenses

1. <u>Retainer Fee</u>: CAS agrees to pay SBP a monthly retainer fee equal to $5,000 per month for six months beginning immediately upon signing this Agreement.

2. <u>Success Fee</u>:

   A. If CAS successfully signs a purchase order which is <u>procured by</u> SBP, <u>solicited by SBP</u> or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers. Plus;

   B. If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer. CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified. Plus;

   C. If CAS successfully closes a business transaction other than direct customer sales such as strategic partnerships, joint ventures, technology licensing, or any other form of business combinations or value transfer whereby SBP identified the opportunity and/or guided the transactional process through necessary strategic advisory and consulting services, then CAS agrees to also pay SBP a success fee amount equal to 1.5% of the transaction value of such business transaction or a minimum success fee equal to $50,000 whichever is greater.

   D. Payment due under Section A and B shall be the 30th day after the payments are collected from the customers. Payment due under Section C shall be the 30th day after the closing of the transaction.

3. <u>Out of pocket expenses</u>: During the Term of this engagement, CAS shall reimburse SBP for project related expenses including travel expenses when pre-approved on a case by case basis. CAS shall pay SBP an upfront project expense budget equal to an amount of $2,000 to reimburse SBP for its purchase of market data.

4. <u>Other Payment</u>: The pre-approved project budget shall be immediately payable upon signing this agreement. The monthly retainer fees shall be payable at the end of each month relating to this agreement for six consecutive months. For example, the first monthly retainer fee shall be payable on April 30 2008 followed by five additional monthly retainer fee payments in roughly 30 day increments.





363 W. Big Beaver, Suit
Troy, Michigan 4
Phone: 248-246-
Fax: 877-693-
E-mail: info@SB-BusinessPartners
www.SB-BusinessPartners

5. <u>Complete Agreement</u>:  The parties agree and represent that this Agreement contains all of the terms and conditions agreed upon by the parties with respect to CAS's business relationship with SBP, including, but not limited to, the subject matter of this Agreement. The parties further agree and represent that this Agreement constitutes the entire and only agreement and understanding between CAS and SBP and any related entity or individual with respect to the subject matter of this Agreement. This Agreement supersedes and cancels all prior agreements and understandings, written or oral, with respect to CAS's business relationship with Agent or any related entity or individual. No other agreements or understandings, written or oral, shall be deemed to exist or to bind either of the parties. No officer, employee, or agent of CAS has any authority to make any representation or promise, written or oral, contrary to this Agreement. This Agreement cannot be modified or changed except by a written instrument expressly for that purpose signed by both parties.

6. During the Term of engagement, CAS may disclose to SBP confidential information and trade secrets, including, but not limited to, information about CAS's products, CAS's business methods and procedures, CAS's operational techniques, pricing information, customer lists, and other product-related information, that is the property of CAS and enables CAS to compete successfully in the sale of its products. In exchange for these disclosures and CAS's commitments:

<u>A.</u>     SBP shall treat all the above-listed information as confidential. Both during the term of this Agreement and after the date on which this Agreement expires or is otherwise terminated, SBP shall not use and shall not disclose to any third party any confidential information except to the extent necessary to fulfill its duties.

<u>B.</u>     If SBP violates Section 6.A of this Agreement, CAS shall be entitled to temporary and/or permanent injunction(s) restraining SBP from that violation and shall also have the right to pursue any other available remedies, including the recovery of damages and reasonable attorney's fees.

### Mutual Indemnification

SBP and CAS will mutually indemnify each other on demand and will hold each other harmless against any and all actions, claims, proceedings, liabilities and losses whatsoever including but not limited to any and all related costs, expenses, and/or damages which may occur or may be attributed in any way from, or are in any way connected with this agreement unless and to the extent that they have been finally and judicially determined to have been caused by gross negligence or willful default..





363 W. Big Beaver, Sui
Troy, Michigan
Phone: 248-246
Fax: 877-693
E-mail: info@SB-BusinessPartner
www.SB-BusinessPartner

### Counterparts

This Agreement may be signed in one or more counterparts and by one or more parties on separate counterparts, each of which will be deemed to be an original of this Agreement and all of which, when taken together, will be deemed to constitute the same agreement. The delivery by fax or as a portable document file attachment to an e-mail of signed counterparts of this Agreement or of any document in connection with or pursuant to this Agreement will constitute effective execution and delivery of this Agreement or such document and may be used in lieu of an original for all purposes in the same manner as if the party who received the fax or e-mail had received the original, signed Agreement or document.

### Dispute Resolution

In the case where we encounter disputes irresolvable through negotiations, we agree to seek arbitration via the American Association of Arbitration; where the award of the arbitration shall be legally binding and final. The venue of the arbitration shall be in the State of Michigan.

### Governing Law

This Agreement shall be construed and governed by the laws of the State of Michigan, United States of America.

### This Proposal

The above contains the entirety of our engagement proposal. If these arrangements are acceptable, please sign this letter and return it to us.

Stonebridge Equity LLC
Stonebridge Business Partners (dba)

Signature

Name: Rex R. Struble

Title: Managing Partner

Date: 4/1/08, 2008

China Automotive Systems, Inc. (CAS)

Signature

Name: Mr. Hanlin Chen

Title: Chairman, CAS

Date: 5-12-2008