STATE OF MICHIGAN
PRIVATE ARBITRATION
ON APPEAL

**STONEBRIDGE EQUITY LLC, d/b/a**           Pamela R. Harwood
**STONEBRIDGE BUSINESS PARTNERS,**    **Arbitrator on Appeal**
a Michigan limited liability company,

       Claimant-Appellee,

vs.

**CHINA AUTOMOTIVE SYSTEMS, INC.,**
a Delaware corporation,

       Respondent-Appellant.

_____/

**ARBITRATOR'S OPINION ON APPEAL**

I.  **SUMMARY OF THE CASE**

This Arbitration and the appeal from the Arbitrator's Final Award dated February 4, 2010 arises from an Engagement Agreement: Business Development Services, dated April 1, 2008 between Claimant Stonebridge Equity Partners LLC d/b/a Stonebridge Business Partners (SBP) and Respondent China Automotive Systems, Inc. (CAS). (Appellant's Brief, Exhibit 3).

A.  **PROCEDURAL HISTORY**

SBP filed an action in the United States District Court for the Eastern District of Michigan, Case No. 2:09-cv-11541. CAS filed a Motion to Dismiss based upon an arbitration clause contained in the Agreement. The parties executed an Arbitration Agreement and the District Court action was dismissed.

An Arbitration Hearing was conducted on November 30, 2010 before Arbitrator Gene J. Esshaki. SBP called Dr. Haimian Cai of CAS and Rex Struble of SBP. CAS called Dr. Cai in its case in chief.

Following the conclusion of the Hearing, the parties submitted post-hearing statements.

Mr. Esshaki issued his Partial Award Number One on December 28, 2010. He issued his Final Award on February 4, 2011, making the following award in favor of SBP:

- Commissions Due as of December 31, 2010: $147,239.09
- Penalty Under MCL 600.2961: $100,000.00
- Legal Fees: $70,000.00

- Interest at the rate of 4% per annum from the date of the filing of the original Complaint and
- Each party to bear their own costs.

CAS has appealed this award, as provided under the Arbitration Agreement.

## B. THE ARBITRATION AGREEMENT

The Arbitration Agreement entered into by the parties includes a provision allowing for the appeal of the "legal conclusions and other findings made by the hearing arbitrator" as follows:

> 5.3 <u>Finality of Award</u>: Subject to the right to appeal as set forth in this Section, any award by the arbitrator (or the appeal arbitrator, if applicable) shall be final and conclusive upon the parties and a judgment may be entered in the Circuit Court or United States District Court having jurisdiction for the forum. After the entry of an arbitral award, either party shall have thirty (30) days after it receives notice of the award to fully comply with the award; a judgment may not be entered to enforce the award until the parties have had an opportunity to comply with the arbitral award according to this provision.
>
> 5.3.1 Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, but only if notice of appeal is served by the appealing party on the opposing party within 30 days after the date of the decision of the hearing arbitrator is mailed to the parties. Service shall be deemed completed upon receipt of the notice of appeal by the opposing party. The hearing arbitrator's award shall therefore not become final and binding until this period has lapsed without a notice of appeal being served.
>
> 5.3.2 If a notice of appeal is filed, then the parties shall appoint an arbitrator in the same manner as described in Section II to serve as the appeal arbitrator. The appeal arbitrator may not take new evidence, but shall consider briefs and oral argument of counsel, as well as the written record of the hearing (if one exists). The standard of review shall be the same as if the matter were appealed to a

> Michigan appellate court. The appeal arbitrator shall render its decision and ruling in writing within 30 days of the close of oral arguments. The appeal arbitrator's ruling shall be final and binding and subject to reversal only as allowed by the standards set forth in the Federal Arbitration Act.

### C. THE ARBITRATION AWARDS

The dispute on appeal concerns the interpretation of the April 1, 2008 Agreement between SBP and CAS pertaining to a contract awarded to CAS by Chrysler for certain parts sold by CAS to Chrysler for the J/K vehicle, commonly known as the Jeep Wrangler. Specifically, the Arbitrator found that CAS owed "Success Fees" to SBP based upon its efforts in negotiating a price in excess of an agreed upon "target price." CAS argues on appeal that the Arbitrator erred in awarding and calculating these "Success Fees" for reasons discussed in detail below.

The first paragraph in the Agreement states:

> In follow up to our recent meeting in Troy Michigan, this engagement agreement ("Agreement") is designed to focus on providing CAS with business development services to help you identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe.

SBP's compensation for services provided under the Agreement consisted of a monthly retainer of $5,000 for six months and the payment of "Success Fees", which are defined as follows:

> 2. Success Fee:
>
> A.  If CAS successfully signs a purchase order which is procured by SBP, solicited by SBP or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured

     cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers. Plus;

B. If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer. CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified. Plus;

C. If CAS successfully closes a business transaction other than direct customer sales such as strategic partnerships, joint ventures, technology licensing, or any other form of business combinations or value transfer whereby SBP identified the opportunity and/or guided the transactional process through necessary strategic' advisory and consulting services, then-CAS agrees to also pay SBP a success fee amount equal to 1.5% of the transaction value of such business transaction or a minimum success fee equal to $50,000 whichever is greater.

D. Payment due under Section A and B shall be the 30th day after the payments are collected from the customers. Payment due under Section C shall be the 30th day after the closing of the transaction.

The arbitration hearing concerned SBP's claims for Success Fees under Paragraphs 2.A and 2.B with respect to Chrysler J/K and D/J vehicles and under Paragraph 2.C with respect to a joint venture between CAS and another company, De Amertek. The Hearing Arbitrator concluded that SBP was entitled to Success Fees under Paragraph 2.B for J/K vehicle parts. This award is the only matter at issue in this appeal.

The Hearing Arbitrator concluded that the Agreement was ambiguous as to whether Paragraph 2.B applied only to new customers of CAS or whether it applied to existing customers from whom purchase orders were issued in which the agreed upon target price was exceeded by the actual price. After determining the existence of such an ambiguity, the Hearing Arbitrator considered extrinsic evidence, specifically early drafts of the Agreement in which the language clearly limited the payment of Success Fees based on pricing in excess of a target price to new customer sales. He concluded that because the Agreement as executed by the parties did not clearly limit the payment of "excessive pricing" Success Fees to sales to new customers, that it was reasonable to assume that the parties did not intend to so limit Paragraph 2.B.

The Arbitrator concluded that the parties agreed upon a target price of $120.00 per part for the J/K parts. He concluded that the Chrysler purchase orders establish that the final awarded price of the these parts was $121.86. SBP therefore was entitled to commission of $0.744 on all parts sold by CAS to Chrysler. (($121.86 - $120.00) x 0.40 = $0.744).

## II. STANDARD OF REVIEW

The parties do not agree as to the standard of review to be undertaken by the Appeal Arbitrator. Appellant argues that the standard is that of an appellate court reviewing the judgment of a trial court. It argues that questions of contract interpretation are questions of law that are subject to *de novo* review and that findings of fact are reviewed for clear error.

Appellee, on the other hand, argues that the standard of review is the standard for vacation of an arbitration award under the Michigan Arbitration Act. MCL 600.5021 and MCR 3.602(J)(2).

Consideration of the language of the Arbitration Agreement pertaining to the appeal of an award causes the Appeal Arbitrator to conclude that the standard of review is that to be applied by a Michigan appellate court reviewing a trial court judgment. The Arbitration Agreement states in pertinent part:

> 5.3.1 Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, ...
>
> 5.3.2 ... The standard of review shall be the same as if the matter were appealed to a Michigan appellate court. ... The appeal arbitrator's ruling shall be final and binding and subject to reversal only as allowed by the standards set forth in the Federal Arbitration Act.

Thus, the parties agreed that the legal conclusions and other findings made by the Hearing Arbitrator are reviewable subject to the same standards as would be applied by a Michigan appellate court. Moreover, the parties reference to the Appeal Arbitrator's ruling being subject to reversal under the standards of the Federal Arbitration Act certainly mitigates against applying the standard of review under the Michigan Arbitration Act.

Michigan appellate courts review findings of fact under a clearly erroneous standard. *Henry v Dow Chem Co* 484 Mich 483, 495 (2009). "A finding is 'clearly erroneous' if, after reviewing the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Federated Publications v City of Lansing*, 467 Mich 98, 107 (2002).

The construction of a contract presents a question of law that is subject to *de novo* review. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463 (2003). Whether a contract is ambiguous also is subject to *de novo* review, *DaimlerChrysler Corp v G Tech Pro Staffing, Inc*, 260 Mich App 183, 185 (2003), as is whether extrinsic evidence should be used to interpret the contract. *In re Kramek Estate*, 268 Mich App 565, 573 (2005).

Once a contract is found to be ambiguous, however, the meaning of the contract becomes a question of fact, *Klapp, supra,* at 469, and is subject to review under the clear error standard.

## III. CLAIMS OF ERROR

Appellant makes the following six claims of error by the Hearing Arbitrator:

- The Arbitrator improperly used extrinsic evidence to determine whether the Engagement Agreement is ambiguous;

- Although the Engagement Agreement allows SBP to recover a success fee only for purchase orders from new customers, the Arbitrator's award is based on sales to an existing customer with which CAS did business before its agreement with SBP;

- Even if it were proper to consider extrinsic evidence in construing the Engagement Agreement, the evidence submitted at the hearing below established that SBP is not entitled to recover any success fees;

- The Arbitrator's construction of the success fee clause and "new customer" requirement is one that neither party advanced and that is contrary to the plain text of the Engagement Agreement;

- The Arbitrator mistakenly concluded that the parties had agreed on a "target price," one of the critical elements in determining whether SBP is entitled to a success fee; and

- The Arbitrator erroneously determined SBP's success fee based on a single amendment to a purchase order rather than the "actual" price, as required by the parties' Engagement Agreement.

IV. ANALYSIS

    A. WHETHER THE HEARING ARBITRATOR IMPROPERLY USED EXTRINSIC EVIDENCE TO DETERMINE WHETHER THE AGREEMENT IS AMBIGUOUS

Initially, Appellant argues that the Hearing Arbitrator used extrinsic evidence to create an ambiguity in the Agreement by looking to the earlier drafts of the Agreement. However, the Hearing Arbitrator states in Partial Award Number One at pages 9-10 that the conclusion that the Agreement is ambiguous is based upon the language of the contract itself, not based upon the consideration of extrinsic evidence:

> In reviewing Exhibit 8, I find, as a matter of law, that the contract is ambiguous. This ambiguity arises for several reasons. Initially, the introductory paragraph of the contract limits activities of SBP to pursuing new customers and strategic partners. That provision, however, carried forward in Section 2. A. governing a commission for success fees, on sales procured, solicited or pursued by SBP. Further, I find an ambiguity exists in the contract between the language of Section 2. A. and 2. B. While 2. A. is limited to purchase orders procured, solicited or pursued by SBP during the term of the engagement, Section 2. B. indicates would be entitled to a success fee for procurement, solicitation "and/or effort" of SBP, The language of Section 2. B. is dramatically different than the language of Section 2. A. in that 2. A. clearly identifies that the purchase order is to be procured, solicited or pursued by SBP, while the language of 2. B. indicates success compensation can be awarded for improving the final price of a contract that was procured, solicited or resulted from any effort of SBP.

It is clear that the Hearing Arbitrator concluded that the Agreement is ambiguous prior to giving consideration to extrinsic evidence, such as the earlier drafts of the Agreement.

Further, although parol evidence may not be permitted to contradict the terms of a written contract, extrinsic evidence may be used to prove the existence of an

ambiguity in a contract. As set forth in *Goodwin, Inc v Coe Pontiac, Inc*, 392 Mich 195, 209-210, 220 NW2d 664 (1974), Michigan law recognizes the admission of extrinsic evidence as follows:

> From these cases we derive the following rules to decide this case:
>
> 1) Where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of ambiguity.
>
> 2) Where ambiguity may exist in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties.
>
> 3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract.

Some Michigan courts have opined that *Goodwin* has been implicitly overruled by *Union Oil Co of California v Newton*, 397 Mich 486, 245 NW2d 11 (1976). See, for example, *NAG Enterprises, Inc v All State Industries, Inc*, 85 Mich App 194, 270 NW2d 738 (1978) and *Michigan National Bank of Detroit v Holland-Dozier-Holland*, 73 Mich. App. 12, 250 N.W.2d 532 (1976). However, as the Sixth Circuit noted in *C.E. Hale Corp v Butler Polymert, Inc*, 1989 WL 16969 (6th Cir.), *Union Oil* merely clarified that when extrinsic evidence is introduced for the purpose of proving the existence of an ambiguity, the evidence is not admissible to prove that the intent of the parties was inconsistent with the express written terms of the contract.

### B. WHETHER THE ARBITRATOR ERRED IN AWARDING SUCCESS FEES TO SPB PERTAINING TO THE NEGOTIATION OF PRICE OF SALES TO AN EXISTING CUSTOMER

Appellant argues that even if the Agreement is ambiguous, the extrinsic evidence demonstrates that Appellee is only entitled to Success Fees for new customers because of the introductory paragraph in which it states that the Agreement "is

-9-

designed to <u>focus</u> on providing CAS with business development services to help you <u>identify and pursue new customers</u> and strategic partners ..." (Emphasis added). Appellant contends that the Hearing Arbitrator erred in concluding that this language did not limit Success Fees under both Paragraphs 2.A and 2.B to business generated from new customers.

Appellee, on the other hand, contends that the Agreement contains no language that limits either Success Fees under 2.A or 2.B to purchase orders from new customers. It argues that there is nothing in either Paragraph 2.A or 2.B that limits the obligation to pay success fees to purchase orders with new customers, as opposed to existing customers.

The Hearing Arbitrator concluded that the Agreement was ambiguous for the reasons outlined above. He cited earlier drafts of the Agreement in which the Success Fees were set forth in a single paragraph that specifically referenced payment of Success Fees for purchase orders obtained from "new customers." (Appellant's Brief Tab 15). When the final Agreement was executed, this reference was removed. From this modification, the Hearing Arbitrator apparently inferred that the parties did not intend to limit Success Fees to purchase orders obtained by new customers.

Other evidence appears in the record that was not cited by the Arbitrator as extrinsic evidence in support of his finding that the Agreement calls for Appellee to provide services other than identifying and pursuing new customers. This includes the payment of a monthly retainer of $5,000.00 that was invoiced as a consulting fee; the argument raised in Appellant's Brief that the assistance rendered by Appellee in negotiating a price with Chrysler was a service provided under the Agreement; and the very fact that Appellant requested Appellee to assist it in the negotiation of the price.

Appellant, on the one hand contends that all services provided under the Agreement were intended to be related to the identification and pursuit of new customers, but on the other hand contends that Appellee's services in providing assistance with the negotiation of price with Chrysler was compensated under the retainer provisions of the very same contract.

The parties also disagree over the term "focus" in the introductory paragraph. Appellant contends that the term "focus" means "to concentrate", which in turn means to "bring all efforts ... to bear on one thing or activity." Appellee argues that "focus" is "a center of activity. The Appeal Arbitrator agrees that "focus", as used in the Agreement is a verb, which means to concentrate. However, while the "focus" of the Agreement may be on the pursuit of new customers, this is not the exclusive objective of the contract, as evidenced by the parties' own conduct in seeking and providing assistance with respect to negotiating a price with Chrysler.

The Hearing Arbitrator did not err in concluding that the Success Fees in Paragraph 2.B are applicable to the negotiation of price with an existing customer. Nothing in Paragraph 2.B sets forth such a limitation.

### C. WHETHER THE EVIDENCE SUBMITTED AT THE HEARING BELOW ESTABLISHED THAT SBP IS ENTITLED TO SUCCESS FEES

As set forth above, the standard of review with respect to issues of fact is whether the Hearing Arbitrator's findings were clearly erroneous.

The Hearing Arbitrator considered that the draft Agreement dated January 7, 2008 specifically limited Success Fees to new customers:

> IF CAS successfully signs a purchase order for new
> customer sales whereby SBP identified the opportunity or in
> any way enabled the opportunity through providing strategic

> advisory services, THEN CAS agrees to pay SPB a success fee ...

(Appellant's Brief, Exhibit 15).

This limitation was not contained in the final Agreement executed by the parties. The Appeal Arbitrator cannot state that the Hearing Arbitrator's interpretation of the extrinsic evidence was clearly erroneous. The elimination of language from the Success Fees provision limiting that provision to purchase orders to new customers only in the final signed version of the Agreement supports the Hearing Arbitrator's interpretation of the Agreement.

### D. WHETHER THE HEARING ARBITRATOR ERRED IN CONCLUDING THAT SBP IS ENTITLED TO SUCCESS FEES UNDER 2.B WHEN IT WAS NOT ENTITLED TO AN AWARD UNDER 2.A

Appellant argues that because the Hearing Arbitrator found that Respondent was not entitled to an award of success fees under Paragraph 2.A, that it cannot be entitled to an award under 2.B because of the following language:

> If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, **then CAS also agrees to pay**

(Emphasis added).

Appellant argues that if no success fees are awarded under Paragraph 2.A, then it cannot "also agree to pay" success fees under Paragraph 2.B. However, success fees under 2.C also contains the same clause with respect to success fees earned for identifying other transactions such as partnerships, joint ventures or technology licensing. It is clear that these transactions are in no way dependent on the earning of a success fee under Paragraph 2.A.

-12-

The Hearing Arbitrator did not err when he determined that the payment of success fees under Paragraph 2.B are not dependent on the award of Success Fees under Paragraph 2.A.

The Hearing Arbitrator's finding that the actual price awarded to Appellant by Chrysler for the J/K parts was awarded through the effort of Respondent is a finding of fact. This finding was not clearly erroneous as there is sufficient support in the testimony of Rex Struble that Respondent was consulted by Appellant with respect to pricing strategy and that Respondent provided assistance to Appellant with respect to this issue. Even Appellant's representative, Dr. Haimian Cai, admitted that he asked Mr. Struble to consult with him on the Chrysler contract. (Transcript at 217-218). Thus, the Appeal Arbitrator cannot conclude that this finding was clearly erroneous.

E. **WHETHER THE ARBITRATOR COMMITTED CLEAR ERROR IN CONCLUDING THAT THE PARTIES HAD AGREED ON A "TARGET PRICE"**

The question of whether the parties agreed on a "target price" of $120.00 per part for the J/K parts is a finding of fact that will be not be disturbed on appeal in the absence of a clear error having been committed by the Hearing Arbitrator.

There is testimony from Mr. Struble concerning a conversation with Dr. Cai in which they agreed to a $120.00 target price, although it is not clear that the word "target price" was used in that conversation. (Transcript, pp 81-84; 163-167). In addition, Appellant's Brief Exhibit 17, is an e-mail dated September 8, 2008 confirming a "Goal of New Price: $120.00 minimum".

Again, this is an issue of fact and there is support in the record for the Hearing Arbitrator's finding. Accordingly, this is not clear error.

### F. WHETHER THE HEARING ARBITRATOR ERRED IN FAILING TO ACCOUNT FOR PRICE FLUCTUATION IN THE FINAL AWARD

With respect to success fees under Paragraph 2.B, payable if the actual price awarded exceeds the target price, they are determined based upon the "excessive amount", which is defined as "the difference between the actual price and the target price." This provision also states that these fees shall remain in effect "for the life of product". "Actual price" is not defined in the Agreement.

Appellant argues that the Hearing Arbitrator erred in concluding that the actual price is determined from the October 2010 Purchase Order and is not subject to fluctuation, for example should Chrysler impose a 2% price reduction as is referenced in the Hearing Arbitrator's Final Award. In short, Appellant argues that "actual" means "existing in fact".

Respondent argues that the "actual price awarded" is determined as of the date of the determination of the price, regardless of any subsequent price fluctuations, either positive or negative.

This is a question of contract interpretation which is subject to *de novo* review.

Words in a contract are given their plain, ordinary everyday meaning. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41 (2003). "Actual" means "a: existing in act and not merely potentially b : existing in fact or reality." Merriam-Webster's Collegiate Dictionary.

The issue is whether the "actual price awarded" is the price that CAS negotiated with Chrysler through Respondent's efforts or the price that Chrysler actually agrees to pay.

-14-

The Appeal Arbitrator concludes that the term "actual price" means the price that Chrysler in fact paid to CAS. In the event that Chrysler unilaterally imposes a price reduction in the future or CAS otherwise negotiates a new price with Chrysler, the price that Chrysler agrees to pay shall be the "actual price awarded" for the purpose of determining success fees under Paragraph 2.B.

## V. CONCLUSION

In conclusion, the Hearing Arbitrator's Final Award is reversed as to the conclusion that the award of success fees at a rate of $0.744 per part under Paragraph 2.B of the Agreement is constant for the life of the product. In all other respects, the Hearing Arbitrator's Partial Award Number One and Final Award are affirmed.

Dated: June 23, 2011

*Pamela R. Harwood*
Pamela R. Harwood
Appeal Arbitrator