**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**STONEBRIDGE EQUITY LLC,**
**d/b/a STONEBRIDGE BUSINESS**
**PARTNERS,** a Michigan limited
liability company,

          Plaintiff,                      Case No.  2:09-cv-11541

**vs.**                                     Honorable Denise Page Hood

**CHINA AUTOMOTIVE SYSTEMS, INC.,**    Magistrate Judge R. Steven Whalen
a Delaware corporation,

          Defendant.

_____

Randall J. Gillary (P 29905)         Mark V. Heusel (P 47528)
Kevin P. Albus (P 53668)             DICKINSON WRIGHT PLLC
RANDALL J. GILLARY, P.C.          Attorneys for Defendant
Attorneys for Plaintiff               301 E. Liberty St., Ste. 500
201 W. Big Beaver Rd., Ste. 1020     Ann Arbor, MI  48104
Troy, MI  48084                   (734) 623-1908
(248) 528-0440

_____

**FINAL JUDGMENT**
**CONFIRMING ARBITRATION AWARD**

      This matter having come before the Court pursuant to Plaintiff's Motion for Entry of

Judgment Confirming Arbitration Award; Plaintiff having filed the Complaint in this matter on

April 24, 2009; the Court having entered a Stipulated Order for Dismissal Without Prejudice on

September 28, 2009 so that the parties could submit their claims to arbitration; the Court having

retained jurisdiction for the purpose of confirming, vacating, or correcting any arbitration

award in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1-16; the parties having

submitted their disputes to arbitration; an arbitration hearing having been conducted on

LAW OFFICES OF
RANDALL J. GILLARY, P.C.
COLUMBIA CENTER
201 W. BIG BEAVER ROAD
SUITE 1020
TROY, MI  48084
———
(248) 528-0440
FAX (248) 528-3412

November 30, 2009; the hearing arbitrator having issued his Partial Award Number One on

December 28, 2010; additional evidence having been thereafter submitted to the hearing

arbitrator; the hearing arbitrator having issued his Final Award on February 4, 2011; Defendant

having thereafter appealed; an appeal hearing having been conducted on May 24, 2011; the

appeal arbitrator having issued her Arbitrator's Opinion On Appeal on June 23, 2011; and the

Court being otherwise fully advised in the premises;

   JUDGEMENT IS HEREBY ENTERED AS FOLLOWS:

- The arbitration award, as reflected in Partial Award Number One, the Final

Award, and the Arbitrator's Opinion On Appeal, is hereby confirmed.

- Partial Award Number One (attached hereto as Exhibit A), the Final Award

(attached hereto as Exhibit B), and the Arbitrator's Opinion On Appeal (attached hereto as

Exhibit C), are hereby incorporated by reference and made a part of this judgment.

- Defendant is liable to Plaintiff for sales commissions in the amount of

$147,239.09 through December 31, 2010.

- Defendant is liable to Plaintiff for additional sales commissions subsequent to

December 31, 2010 in accordance with the terms of Partial Award Number One, the Final

Award, and the Arbitrator's Opinion On Appeal.

- Defendant is liable to Plaintiff for penalty damages of $100,000 pursuant to

M.C.L. 600.2961(5).

- Defendant is liable to Plaintiff for attorney fees of $70,000 pursuant to M.C.L.

600.2961(6).

- Defendant is liable to Plaintiff for interest at the simple interest rate of 4% per

annum from the date of filing the original Complaint.

IT IS HEREBY ORDERED that Defendant shall pay the following sums to Plaintiff:

| | |
|---|---|
| Sales commissions through December 31, 2010 | $147,239.09 |
| Penalty Damages pursuant to MCL 600.2961(5) | $100,000.00 |
| Attorney Fees pursuant to MCL 600.2961(6) | $70,000.00 |
| Total Damages through December 31, 2010 | $317,239.09 |
| Interest at 4% through August 31, 2011 | $29,898.70 |
| Total Damages plus Interest through August 31, 2011 | $347,137.79 |

IT IS FURTHER ORDERED that if the date of entry of this judgment occurs before or after August 31, 2011, the amount of interest due as set forth above shall adjusted to provide for interest at the simple interest rate of 4% per annum through the date of entry of this judgment.

IT IS FUTHER ORDERED that Defendant shall pay commissions to Plaintiff on the JK gear sales identified in the arbitration award from January 1, 2011 forward, on a monthly basis, for the life of the part.

IT IS FURTHER ORDERED that Defendant shall pay interest to Plaintiff with regard to the commissions due on the JK gear sales from January 1, 2011 through the date of entry of this judgment at the simple interest rate of 4% per annum.

IT IS FURTHER ORDERED that Defendant shall provide supporting documentation including the selling price, quantity of parts shipped, and total sales each month for the life of the part.

_____

United States District Judge

Dated: _____

3

**STATE OF MICHIGAN**
**IN PRIVATE ARBITRATION**

**STONEBRIDGE EQUITY LLC,**
**d/b/a STONEBRIDGE BUSINESS**
**PARTNERS,** a Michigan limited
liability company,

           Claimant,                                  Gene J. Esshaki
                                                            Arbitrator

vs.

**CHINA AUTOMOTIVE SYSTEMS, INC.,**
a Delaware corporation,

           Respondent.

_____/

| | |
|---|---|
| Randall J. Gillary (P 29905) | Mark V. Heusel (P 47528) |
| Kevin P. Albus (P 53668) | DICKINSON WRIGHT, PLLC |
| RANDALL J. GILLARY, P.C. | Attorneys for Respondent |
| Attorneys for Claimant | 301 East Liberty Street, Suite 500 |
| 201 W. Big Beaver Road, Suite 1020 | Ann Arbor, Michigan 48104 |
| Troy, Michigan  48084 | (734) 623-1908 |
| (248) 528-0440 | |

_____/

**<u>PARTIAL AWARD NUMBER ONE</u>**

This matter was brought on for hearing before the undersigned, the duly appointed Arbitrator of the parties, on November 30, 2010.  The hearing was conducted at the offices of the undersigned located at 300 River Place, Suite 3000, Detroit, Michigan 48207.  The hearing commenced at approximately 9:00 a.m. and concluded at approximately 5:30 p.m. on November 30, 2010.

The Claimant in this matter, Stonebridge Equity LLC, d/b/a Stonebridge Business Partners, ("SBP") a Michigan limited liability company, was represented at the hearing by

Exhibit A

Randall J. Gillary, Esq. of Randall J. Gillary, P.C.  Respondent, China Automotive Systems, Inc., ("CAS") a Delaware corporation, was represented by Mark V. Heusel, Esq. of Dickinson Wright, PLLC.

At the start of the hearings, the parties stipulated that all of the exhibits contained in their Joint Exhibit Book, consisting of Exhibits 1 through 78, inclusive, would be admitted as evidence in the proceedings.  Based upon the stipulation, Exhibits 1 through 78, inclusive, were admitted.

During its case in chief, SBP called Dr. Haimian Cai of CAS and Mr. Rex Struble, SBP's principal.  CAS called Dr. Cai in its case in chief.  Each witness was placed under oath by the undersigned.  Each side was permitted to cross-examine the other side's witnesses.  At the conclusion of the testimony, both sides confirmed that they had rested their cases.

The parties reserved the right to file post-hearing statements, not exceeding 15 pages in length and containing proposed findings of fact and conclusions of law.  The statements were filed with the undersigned and served upon opposing counsel on December 20, 2010.

Having reviewed the documentary exhibits presented and received the testimony of the parties' witnesses, and having been afforded an opportunity to judge the credibility of such witnesses, and, finally, having considered both the pre- and post-hearing statements of the parties, the undersigned does hereby submit this as his Partial Award Number One:

## PROCEDURAL HISTORY

This matter was originally commenced by SBP in the United States District Court for the Eastern District of Michigan, Southern Division, being Case No. 2:09-cv-11541.  CAS filed a Motion to Dismiss Plaintiff's First Amended Complaint based upon an arbitration clause contained in the contract that is the subject matter of these proceedings.

2

Exhibit A

On September 21, 2009, the parties executed a formal Arbitration Agreement governing these proceedings that also resulted in a dismissal of the action previously pending in the United States District Court. A copy of the parties' Arbitration Agreement is attached hereto and incorporated herein by this reference.

The undersigned was selected by the parties as the sole Arbitrator in these proceedings and has previously executed an Oath of Office.

### STATEMENT OF DISPUTE

The parties entered into an Engagement Agreement: Business Development Services, dated April 1, 2008 (Exhibit 8) (all references shall be to the exhibits set forth in the Joint Exhibit Book). Exhibit 8 is so fundamental to the relationship of the parties that a copy of it is being attached hereto and incorporated herein by this reference.

As provided in Exhibit 8, Claimant was engaged by Respondent to focus on providing Respondent with business development services to help Respondent identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe.

Under the section entitled "Fees & Expenses," Plaintiff was to be compensated for its services under the Engagement Agreement as follows:

1. Retainer Fee: CAS agrees to pay SBP a monthly retainer fee equal to $5,000 per month for six months beginning immediately upon signing this Agreement.

2. Success Fee:

   A. If CAS successfully signs a purchase order which is procured by SBP, solicited by SBP or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is

3

Exhibit A

identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers.  Plus;

B. If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer.  CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified.  Plus;

C. If CAS successfully closes a business transaction other than direct customer sales such as strategic partnerships, joint ventures, technology licensing, or any other form of business combinations or value transfer whereby SBP identified the opportunity and/or guided the transactional process through necessary strategic advisory and consulting services, then CAS agrees to also pay SBP a success fee amount equal to 1.5% of the transaction value of such business transaction or a minimum success fee equal to $50,000 whichever is greater.

D. Payment due under Section A and B shall be the 30th day after the payments are collected from the customers.  Payment due under Section C shall be the 30th day after the closing of the transaction.

3. <u>Out of pocket expenses</u>:  During the Term of this engagement, CAS shall reimburse SBP for project related expenses including travel expenses when pre-approved on a case by case basis.  CAS shall pay SBP an upfront project expense budget equal to an amount of $2,000 to reimburse SBP for its purchase of market data.

4. <u>Other Payment</u>:  The pre-approved project budget shall be immediately payable upon signing this agreement.  The monthly retainer fees shall be payable at the end of each month relating to this agreement for six consecutive months.  For example, the first monthly retainer fee shall be payable on April 30 2008 followed by five additional monthly retainer fee payments in roughly 30 day increments.

In its Complaint, SBP asserts a right to recover fees and expenses from CAS pursuant to the Engagement Agreement as follows:

1.        <u>Chrysler Contract / Five Percent Commission on J/K Parts</u>.  SBP asserts that it was instrumental in assisting with the award of a contract by Chrysler Corporation

Exhibit A

to CAS covering certain parts to be manufactured by CAS and sold to Chrysler for the J/K vehicle. During the hearing the parts at issue were commonly referred to as "the power steering gear assembly for the left hand and right hand long wheel base vehicle (four door vehicles) and the power steering gear assembly for the left hand and right hand short wheel base vehicle (two door vehicles)." (The J/K contract is located at Exhibits 53 and 54 in the Joint Exhibit Book.) Under Section 2. A. of the Engagement Agreement, SBP seeks a commission equal to 5% of the gross margin as defined in the Agreement on the sale of all such parts to Chrysler.

2.      <u>Chrysler Contract / Success Fee on the J/K Parts</u>. SBP also seeks an award of commissions from CAS as provided in Section 2. B. of the Engagement Agreement equal to 40% of the "excessive amount," as defined in that section as the difference between the actual price and the target price established for each part, on all right hand and left hand gear assembly parts for the long wheel base vehicle and the right hand and left hand gear assembly parts for the short wheel base vehicle limited to the J/K vehicle contracts.

3.      <u>Chrysler Contract / Five Percent Commission on D/J Parts</u>. SBP also asserts that it was instrumental in assisting with the award of a contract by Chrysler Corporation to CAS covering certain parts to be manufactured by CAS and sold to Chrysler for the D/J vehicle. During the hearing the parts at issue were commonly referred to as "1. DJ Parts; 2. DJ/D2 Parts; 3. DD/DX3 Parts and 4. DD Parts." The DJ contracts were issued by Chrysler to CAS on July 10, 2009. Under Section 2. A. of the Engagement Agreement, SBP seeks a commission equal to 5% of the gross margin as defined in the Agreement on the sale of all such D/J parts to Chrysler.

5

4.    <u>Chrysler Contract / Success Fee on the D/J Parts</u>.  SBP also seeks an award of commissions from CAS as provided in Section 2. B. of the Engagement Agreement equal to 40% of the "excessive amount," as defined in that section as the difference between the actual price and the target price established for each part, on all D/J parts sold or to be sold by CAS to Chrysler.  The parties acknowledged that the sales of these parts were for the 2011 models and that production was just commencing at the date of the hearings so no actual sale numbers are available.

5.    <u>De Amertek Fee</u>.  Finally, SBP asserted a right to a success fee equal to $50,000 under the Engagement Agreement, <u>Section 2.   Success Fee: C.</u> for being instrumental in the establishment of a Joint Development Agreement between CAS and De Amertek, see Exhibit 59.  This success fee stands on its own and has no relation to the commission fees and success fees being claimed by SBP on the Chrysler J/K and D/J part contracts as described in Sections 1-4 above.

## STATEMENT OF FACTS

Despite a full day of testimony by two witnesses that were each subject to direct and cross-examination, and the introduction of 78 documentary exhibits consisting of hundreds of pages of documents, there is little, if any, factual dispute between these parties.

The parties agree that SBP was retained by CAS pursuant to Exhibit 8, the Engagement Agreement for Business Development Services.  Under Exhibit 8, SBP had three obligations to CAS. These obligations included:

1.    <u>Marketing Report</u>.  SBP was to prepare a thorough marketing report analyzing the global steering system marketplace, the position of CAS in that

Exhibit A

marketplace and how CAS could exploit its position with customers and strategic partners to increase its sales.

2.    SBP was to assist CAS in procuring and soliciting the sales of products of CAS and was also to direct its efforts to improving target prices for products of CAS.

3.    SBP was to identify strategic partners, joint ventures, technology licensing and other forms of business combination or value transfers for CAS in the global steering systems marketplace.

The parties do not dispute that during the course of the engagement, SBP produced the marketplace study required of it, identified, directed and assisted in the establishment of a potential strategic partnership and, finally, assisted CAS in the pricing strategy utilized with Chrysler Corporation over the J/K and D/J parts.

The parties differ on whether SBP is entitled to any compensation above its monthly retainer, that was due and payable for six months and was in fact paid by CAS, for the efforts it expended under the Engagement Agreement.

The question of whether SBP is entitled to any success fee compensation referenced in the Engagement Agreement will turn upon the language of the Agreement, as well as the conduct of the parties.

## POSITION OF THE PARTIES

SBP Position.  SBP argues that it is entitled to success fee compensation on both J/K parts and the D/J parts being sold by CAS to Chrysler because, at the request of CAS, SBP became intimately involved in a pricing strategy that resulted in CAS obtaining a price increase on the J/K parts, as well as locking down the order on the D/J parts through the SBP strategy of bundling the prices on those parts with the J/K parts.  SBP argues that at the point it was

Exhibit A

requested by CAS to become involved in the Chrysler pricing strategy, a serious pricing dispute existed between CAS and Chrysler which would have jeopardized the final award of the J/K parts contracts. Further, SBP argues that in a strategy first conceived by SBP, the pricing on the D/J parts contracts were bundled with the pricing on the J/K parts contracts and ultimately both pricing strategies were accepted by Chrysler resulting in (a) saving the J/K parts contract for CAS; and (b) obtaining the final award of the D/J parts contracts from Chrysler for CAS.

Finally, in its pre-hearing statement SBP made claim for a $50,000 success fee as a result of bringing together CAS and an entity known as De Amertek, a U.S. corporation located in Oakbrook, Illinois. SBP argues that it introduced CAS to De Amertek and that it participated in what ultimately became a Memorandum of Understanding between the two entities. See Exhibit 59. Under the expressed terms of the Engagement Agreement, SBP identified the strategic partner and guided the parties through to a written Memorandum of Understanding which entitled it to a success fee.

CAS Position. In defense of these claims, CAS argues that SBP's obligation under the Engagement Agreement was to "focus on providing CAS with business development services to help (CAS) identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe." CAS argues that it was working with Chrysler Corporation and in fact had received a purchase order, although not complete as to terms, on the J/K parts it is currently supplying to Chrysler Corporation prior to even engaging SBP under Exhibit 8. CAS further argues that the language of Section 2 of the Engagement Agreement limits success fee compensation to SBP to those sales it procured or solicited on behalf of CAS to new clients and because CAS was already working with Chrysler Corporation

8

prior to entering into the Engagement Agreement, the efforts of SBP in participating in the pricing strategy did not result in SBP becoming entitled to any success fee compensation.

Finally, CAS argues that while SBP in fact identified and assisted in guiding the De Amertek transaction leading to the Memorandum of Understanding (Exhibit 59), ultimately, the joint venture product development anticipated in Exhibit 59 did not come to fruition as the development efforts failed to produce a marketable product and no value was generated out of this relationship.

## ANALYSIS

The question of whether SBP is entitled to any success fee compensation under the terms of the Engagement Agreement rests squarely upon the proper determination of the parties' intent under such Section.  As indicated, CAS argues that under the Engagement Agreement, SBP was limited to soliciting and procuring business from new customers.  In opposition, SBP argues that its efforts in participating in the pricing strategy involving Chrysler Corporation resulted in the final part purchase order being issued on the J/K parts and through the bundling of the price concept, ensured that CAS received an award of the D/J parts contracts as well.

In reviewing Exhibit 8, I find, as a matter of law, that the contract is ambiguous.  This ambiguity arises for several reasons.  Initially, the introductory paragraph of the contract limits the activities of SBP to pursuing new customers and strategic partners.  That provision, however, is not carried forward in Section 2. A. governing a commission for success fees on sales procured, solicited or pursued by SBP.  Further, I find an ambiguity exists in the contract between the language of Section 2. A. and 2. B.  While 2. A. is limited to purchase orders procured, solicited or pursued by SBP during the term of the engagement, Section 2. B. indicates SBP would be entitled to a success fee for procurement, solicitation "and/or effort" of SBP.  The

9

language of Section 2. B. is dramatically different than the language of Section 2. A. in that 2. A. clearly identifies that the purchase order is to be procured, solicited or pursued by SBP, while the language of 2. B. indicates success compensation can be awarded for improving the final price of a contract that was procured, solicited or resulted from any effort of SBP.

During the proceedings, CAS introduced copies of prior drafts of the engagement letter. Curiously, the initial draft dated January 7, 2008 (Exhibit 3) contains a reference to new customer sales in both the introductory paragraph and the success fee compensation paragraph, Section 2.   In the second draft of the contract dated March 1, 2008, the reference to new customer sales is continued in the success fee paragraph of the Agreement, Section 2.   It is also curious to note that in both the first and second draft of the contracts, the total success fee language is set forth in one paragraph of the Agreement.

When Exhibit 8 is executed between the parties, any reference to new customer sales has been removed from the success fee section of the contract. Also, the success fee language is now broken down into three different subsections.   There is no indication that subsection B., governing success commissions for target price improvements, has any relationship to subsection A. governing percent commission on gross margins for purchase orders procured, solicited or pursued by SBP.

As I read the language of Section 2.A., SBP would be entitled to a 5% commission on gross margin for all purchase orders which it procured, solicited or pursued during the term of the engagement for the benefit of CAS. On the other hand, I read Section 2. B. of the Agreement to provide that SBP is entitled to a commission of 40% of the amount by which the actual purchase order price exceeds the target price between CAS and its customer. The language does

Exhibit A

not limit SBP to the procurement, solicitation or orders pursued by SBP during the term of the engagement, but extends to "efforts of SBP" which impact the final price.

While Section 2. A. describes the sales commission that SBP would receive for orders it procured, solicited or pursued and adds "plus;" I do not read that word as providing that the excess price commission shall be limited only to those orders referenced in Section 2. A. I reached this conclusion because Section 2. B. also contains at the end "plus;" and then goes on to describe the success fee for a business transaction. Clearly, subsection C. has nothing to do with A. or B. Accordingly, the "plus" does not limit the application of subsection C. or subsection B. to sales referenced in subsection A. as procured, solicited or pursued by SBP. Accordingly, I conclude that the language of Section 2. B. permits SBP to claim a commission for excess price in any situation where its efforts contributed to obtaining that excess price.

## APPLICATION OF CONTRACT TO FACTS

I conclude that the testimony of both sides was clear and uncontroverted. SBP did not procure, solicit or pursue the J/K parts purchase orders issued by Chrysler Corporation to CAS.

Further, I conclude that the activities of SBP in linking the pricing on the D/J parts to the pricing on the J/K parts does not rise to the level of procuring, soliciting or pursuing the purchase orders for the D/J parts from Chrysler to CAS.

On the other hand, I find that the efforts of SBP in participating in the pricing strategy involving the J/K parts and the D/J parts constitute "and/or effort of SBP" in enhancing the target price.

There was documentary evidence introduced at the hearing that the target price was set at $120 on these parts. There was no evidence in documentary form that contradicted this was

Exhibit A

actually the agreed upon target price. Accordingly, I conclude that $120 was the established target price on all of the parts.

Exhibits 53 and 54 establish that the final awarded price on the J/K parts were $121.86. Under the terms of Section 2. B. of the Engagement Agreement, I find that SBP is entitled to a commission equal to 40% of the amount by which the actual awarded price ($121.86) exceeds the targeted price ($120.00). Accordingly, SBP is entitled to a commission of $0.744 on all J/K parts sold or to be sold by CAS to Chrysler Corporation. ($1.86 x 0.40 = $0.744)

As to the D/J parts, I find that once again the target price was $120. Based upon the testimony introduced at the hearings, I also find that the final bid price was $119.90 or 10¢ under the target price. Finally, while the award price set forth in the D/J purchase order (Exhibit 63) is $127.80, testimony established that the price increased not as a result of any efforts by SBP to increase the final price over the target price, but as a result of passing along increased manufacturing costs and currency fluctuations that were recognized by Chrysler Corporation from CAS.

Accordingly, I find that SBP is not entitled to any commissions due on the D/J parts because its efforts did not assist in capturing a final price over the targeted price after consideration of normal cost increases between the date of the quote and the final contract award.

Finally, during the hearing, SBP conceded that while its efforts led to the Memorandum of Understanding executed between CAS and De Amertek, there is no evidence that this Memorandum led to any product that was ultimately sold by the venture. SBP conceded in its case that since no sales were generated and no profits produced to date, SBP was not entitled to a success fee under the Engagement Agreement.

12

Exhibit A

## CONCLUSION

I hereby find as follows:

1.      <u>Success Fee J/K Parts Contracts</u>.  SBP is entitled to a success fee commission equal to $0.744 on each part sold or to be sold by CAS to Chrysler corporation for the J/K parts contracts.

2.      <u>Other Commission Claims</u>.  All other commission claims by SBP against CAS, specifically including the 5% margin claims on the J/K contracts and the D/J contracts and the excess price commission claim on the D/J contracts, are hereby denied.

3.      <u>De Amertek</u>.  I find that since the Memorandum of Understanding solicited by SBP for CAS did not result in the exchange of any value, the sale of any product, gross receipts or any profits to date, SBP is not entitled to the success fee it sought under Section 2. C. of the Engagement Agreement.  This ruling will not bar any claim by SBP for a future relationship that arises between CAS and De Amertek that results in product sales and development or some other exchange of value or profit that can be traced to the introduction of De Amertek to CAS by SBP.

4.      <u>Penalties and Fees</u>.  Based upon the evidence presented, it is not possible to calculate the commission amount due from CAS to SBP for the excess price success fee awarded in this Partial Award.  Since the penalty under the manufacturers representative statute is based, in part, on the Award, the undersigned will require this information before addressing the penalty issue.  Further, the legal fee provision under the statute requires that any fee award must bear some rational relationship to the commission and penalty awarded on the claim.  If the parties are able to agree upon a commission amount due under this Partial Award and submit the same by stipulation to the undersigned, the issue of the penalties and attorney fees will be resolved by a

13

Exhibit A

subsequent award.   If no Stipulation can be reached, an additional brief hearing will be scheduled.

5.     Other Claims and Defenses.   All other claims or defenses of either party not specifically addressed herein are denied in their entirety.

6.     Costs.   The costs of these proceedings, specifically including the fees of the undersigned, shall be borne by the parties as incurred.

December 28, 2010

Gene J. Esshaki, Arbitrator

252332

14

Exhibit A

Sep 23 09 05:25p        Rex R Struble                877 693 2168                    p.1

# ARBITRATION AGREEMENT

This arbitration agreement ("Agreement") is entered into by and between Stonebridge Equity, LLC ("Stonebridge") and China Automotive Systems, Inc. ("China Automotive") September ____, 2009.

## RECITALS

1. On May 12, 2008, Stonebridge and China Automotive entered into a business development services contract ("Contract") under which Stonebridge was to provide business development services to China Automotive in exchange for a fee.

2. The Contract contained an arbitration clause requiring the parties to submit any dispute arising under the Contract to arbitration.

3. Although Stonebridge filed suit against China Automotive, alleging breach of the Contract, in the Eastern District of Michigan, the parties are agreeable to arbitrating this matter in accordance with this Agreement.

4. That case, Civil Action Number 09-11541, is currently pending before Judge Denise Page Hood.

NOW, THEREFORE, based on the foregoing Recitals which the parties accept as true and as part of the basis for this Agreement, and in consideration of the representations, warranties, and promises in this Agreement, and reliance thereon, the parties agree that:

## SECTION I
## AGREEMENT TO ARBITRATE

1.1    The parties shall submit to binding private arbitration all claims contained in Civil Action Number 09-11541.

1.2    The parties shall also submit to binding arbitration all claims, whether common-law or statutory, arising under the Contract.

1.3    Any party's failure to bring claims, whether common-law or statutory, arising under the Contract in the arbitration will result in that party waiving the right to bring those claims in any forum.

1.4    The AAA's Commercial Arbitration Rules effective June 1, 2009, unless otherwise modified by this Agreement, will govern the arbitration..

1.5    The parties specifically agree that no filing fees or other fees shall be required to be paid to the American Arbitration Association or to any other organization relative to the arbitration in this matter. The fees for the arbitrator shall be paid by the parties directly to the arbitrator.

234593v1

Exhibit A

## SECTION II
## SELECTION OF ARBITRATOR

2.1    The parties will, within fourteen days of executing this Agreement, submit three proposed arbitrators to decide the dispute. Within five days thereafter, the parties will confer and choose one arbitrator from that list.

2.2    If the parties cannot agree to one arbitrator from that list, the parties will have ten days to name five different proposed arbitrators and confer regarding that list.

2.3    If the parties still cannot agree to one arbitrator, then either party may request that Judge Denise Page Hood select the arbitrator.

## SECTION III
## HEARING

3.1    The arbitration hearing shall be held within 150 days after the parties have selected an arbitrator and held their first preliminary hearing conference. The hearing shall be recorded and transcribed by a legal court reporting firm, and the costs shared equally by the parties.

3.2    The parties and arbitrator will mutually agree to a date and place for the hearing.

3.3    If the parties and the arbitrator cannot mutually agree to a date and place for the hearing, the arbitrator shall select the date and place.

3.4    The parties may present witnesses testimony at the hearing either in person, by video conference or by video deposition.

3.5    The Federal Rules of Evidence shall be used as a guide during the hearing but the arbitrator shall not be bound to strictly follow the Federal Rules of Evidence.

## SECTION IV
## CONDUCT OF PROCEEDING

4.1    Discovery shall close in this proceeding 30 days prior to the scheduled hearing date. To the extent that the parties have expert witnesses, their testimony may be taken after this date according to the mutual agreement of the parties.

4.2    The parties shall each be entitled to take up to three discovery depositions during the proceeding.

4.3    The parties shall be permitted to request documents and serve no more than 25 interrogatory questions to the other party, including sub-parts.

4.4    Either party shall have the right to request that the arbitrator allow additional discovery for reasonable cause.

234593v1

Exhibit A

## SECTION V
## MISCELLANEOUS

5.1 <u>Dismissal Without Prejudice of Civil Action:</u> The parties will cause a stipulated order to be entered in the District Court dismissing the Civil Action without prejudice pending arbitration of the parties' claim. The order shall provide that the Court will retain jurisdiction for the enforcement of this Arbitration Agreement, and the for the confirmation, vacation, or correction of the arbitration award in accordance with this Arbitration Agreement and the Federal Arbitration Act. 9 U.S.C. § 1 et seq. In the event that the arbitration award is satisfied prior to confirmation of the award in a judgment, the parties will cause to be entered a stipulated order for dismissal with prejudice and without costs.

5.2 <u>Attorneys' Fees and Costs:</u> The parties agree that each party shall bear its own costs and attorneys' fees, if any, during the course of the arbitration, including the costs and fees of the arbitrator. The Arbitrator shall have the authority to award reasonable attorney fees and costs (including arbitration fees) to either party.

5.3 <u>Finality of Award:</u> Subject to the right to appeal as set forth in this Section, any award by the arbitrator (or the appeal arbitrator, if applicable) shall be final and conclusive upon the parties and a judgment may be entered in the Circuit Court or United States District Court having jurisdiction for the forum. After the entry of an arbitral award, either party shall have thirty (30) days after it receives notice of the award to fully comply with the award; a judgment may not be entered to enforce the award until the parties have had an opportunity to comply with the arbitral award according to this provision.

    5.3.1 Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, but only if notice of appeal is served by the appealing party on the opposing party within 30 days after the date of the decision of the hearing arbitrator is mailed to the parties. Service shall be deemed completed upon receipt of the notice of appeal by the opposing party. The hearing arbitrator's award shall therefore not become final and binding until this period has lapsed without a notice of appeal being served.

    5.3.2 If a notice of appeal is filed, then the parties shall appoint an arbitrator in the same manner as described in Section II to serve as the appeal arbitrator. The appeal arbitrator may not take new evidence, but shall consider briefs and oral argument of counsel, as well as the written record of the hearing (if one exists). The standard of review shall be the same as if the matter were appealed to a Michigan appellate court. The appeal arbitrator shall render its decision and ruling in writing within 30 days of the close of oral arguments. The appeal arbitrator's ruling shall be final and binding and subject to reversal only as allowed by the standards set forth in the Federal Arbitration Act.

5.4 <u>Amendments and Modifications:</u> This Agreement may be amended or modified only by a writing identified on its face as an amendment to this Agreement signed by the parties.

234593v1

Exhibit A

5.5    **Integration:**  This Agreement is the final and complete agreement of the parties with regard to the subject matter described herein. All prior written and oral negotiations, representations, and agreements pertaining to this Agreement are superseded by and merged into this Agreement.

**Stonebridge Equity, LLC**

By: _____

Its: _Managing Partner_

Dated: _8-23-2009_


**China Automotive Systems, Inc.**

By: _____

Its: _CHAIRMAN_

Dated: _9-21-2009_


234593v1

                                                                        Exhibit A



**Stonebridge**
business Partners

363 W. Big Beaver, Su
Troy, Michigan
Phone: 248-24(
Fax: 877-69:
E-mail: info@SB-BusinessPartne
www.SB-BusinessPartne

April 1st, 2008

Mr. Hanlin Chen, Chairman
China Automotive Systems, Inc.
No. 1 Henglong Road, Yuqiao Development Zone
Shashi District, Jing Zhou City
Hubei Province 434000
Peoples Republic of China

**SUBJECT:   Engagement Agreement: Business Development Services**

Dear Mr. Chen:

In follow up to our recent meeting in Troy Michigan, this engagement agreement ("Agreement") is designed to focus on providing CAS with business development services to help you to identify and pursue new customers and strategic partners in the automotive and commercial truck markets in North America and Europe.

We understand that China Automotive Systems, Inc. (Collectively, CAS) has decided to pursue sales and business development opportunities in North America and Europe. Furthermore, CAS would like to engage Stonebridge Equity LLC (Stonebridge Business Partners – dba) (collectively, SBP) as your advisor for these efforts subject to the terms and conditions set forth in this Agreement.

This letter confirms our intention and commitment to provide services to CAS and it outlines our scope of work, terms of engagement, and project milestones and deliverables. This letter also confirms CAS commitment to provide SBP with company information, to provide SBP with approval to have discussions with customers/partners and to pay SBP for these services as described in this Agreement.

**Key Deliverables**

Within ninety (90) days of entering into this Agreement, SBP will provide CAS with a written report which addresses each of the following three categories:

1 ) **Competitive Assessment:** SBP will research the competitive position of CAS within the global steering systems marketplace and provide an assessment of CAS's strengths and weaknesses together with a brief profile of each major competitor in the market.

2) **Customer Opportunities:** SBP will conduct a market analysis and provide CAS with lead generation services to identify sales opportunities which may be available for new steering system suppliers to enter into the supply base of the passenger car and commercial truck original equipment manufactures of vehicles.

3) **Strategic Partnering:** SBP will research potential strategic partners to identify joint venture and or acquisition opportunities and or technology licensing opportunities for CAS to consider within the passenger car and commercial truck original equipment manufactures market.





**EXHIBIT**

_____



**Stonebridge**
b u s i n e s s   P a r t n e r s

363 W. Big Beaver, Suit
Troy, Michigan ‹
Phone: 248-246·
Fax: 877-693·
E-mail: info@SB-BusinessPartner:
www.SB-BusinessPartner:

### Duration of Project/Engagement

Duration of Engagement: This Agreement shall be in effect for a period of six months ("Term"). The parties may discuss whether or not to renew the engagement in the last third (30) days prior to the expiration of the Duration of Engagement. This Agreement shall not be terminated prior to its natural expiration of the Duration of Engagement. The Success Fee's as described in Section 2 of Fee's & Expenses below shall survive the natural expiration of this Agreement.

### Fees & Expenses

1. Retainer Fee: CAS agrees to pay SBP a monthly retainer fee equal to $5,000 per month for six months beginning immediately upon signing this Agreement.

2. Success Fee:

   A. If CAS successfully signs a purchase order which is procured by SBP, solicited by SBP or is pursued by SBP during the term of this engagement, CAS agrees to pay SBP 5% of the gross margin which the sale creates for CAS. (whereas gross margin is defined as the difference between the target price for that specific product and the actual direct manufactured cost of goods sold; and, whereas target price shall be as agreed between SBP and CAS at the time at which the opportunity is identified and/or pursued by SBP) CAS has the sole discretion and right to reject any orders from any customers. Plus;

   B. If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, then CAS also agrees to pay SBP 40% of the excessive amount which is defined as the difference between the actual price and the target price. For the purposes of this Section 2 A and B, success fees shall remain in effect for the life of product supply to the customer. CAS and SBP shall agree to a target price for each project at the time each business opportunity is identified. Plus;

   C. If CAS successfully closes a business transaction other than direct customer sales such as strategic partnerships, joint ventures, technology licensing, or any other form of business combinations or value transfer whereby SBP identified the opportunity and/or guided the transactional process through necessary strategic advisory and consulting services, then CAS agrees to also pay SBP a success fee amount equal to 1.5% of the transaction value of such business transaction or a minimum success fee equal to $50,000 whichever is greater.

   D. Payment due under Section A and B shall be the 30th day after the payments are collected from the customers. Payment due under Section C shall be the 30th day after the closing of the transaction.

3. Out of pocket expenses: During the Term of this engagement, CAS shall reimburse SBP for project related expenses including travel expenses when pre-approved on a case by case basis. CAS shall pay SBP an upfront project expense budget equal to an amount of $2,000 to reimburse SBP for its purchase of market data.

4. Other Payment: The pre-approved project budget shall be immediately payable upon signing this agreement. The monthly retainer fees shall be payable at the end of each month relating to this agreement for six consecutive months. For example, the first monthly retainer fee shall be payable on April 30 2008 followed by five additional monthly retainer fee payments in roughly 30 day increments.





363 W. Big Beaver, Suit
Troy, Michigan 4
Phone: 248-246-
Fax: 877-693-
E-mail: info@SB-BusinessPartners
www.SB-BusinessPartners

5. <u>Complete Agreement</u>: The parties agree and represent that this Agreement contains all of the terms and conditions agreed upon by the parties with respect to CAS's business relationship with SBP, including, but not limited to, the subject matter of this Agreement. The parties further agree and represent that this Agreement constitutes the entire and only agreement and understanding between CAS and SBP and any related entity or individual with respect to the subject matter of this Agreement. This Agreement supersedes and cancels all prior agreements and understandings, written or oral, with respect to CAS's business relationship with Agent or any related entity or individual. No other agreements or understandings, written or oral, shall be deemed to exist or to bind either of the parties. No officer, employee, or agent of CAS has any authority to make any representation or promise, written or oral, contrary to this Agreement. This Agreement cannot be modified or changed except by a written instrument expressly for that purpose signed by both parties.

6. During the Term of engagement, CAS may disclose to SBP confidential information and trade secrets, including, but not limited to, information about CAS's products, CAS's business methods and procedures, CAS's operational techniques, pricing information, customer lists, and other product-related information, that is the property of CAS and enables CAS to compete successfully in the sale of its products. In exchange for these disclosures and CAS's commitments:

<u>A.</u>   SBP shall treat all the above-listed information as confidential. Both during the term of this Agreement and after the date on which this Agreement expires or is otherwise terminated, SBP shall not use and shall not disclose to any third party any confidential information except to the extent necessary to fulfill its duties.

<u>B.</u>   If SBP violates Section 6.A of this Agreement, CAS shall be entitled to temporary and/or permanent injunction(s) restraining SBP from that violation and shall also have the right to pursue any other available remedies, including the recovery of damages and reasonable attorney's fees.

### Mutual Indemnification

SBP and CAS will mutually indemnify each other on demand and will hold each other harmless against any and all actions, claims, proceedings, liabilities and losses whatsoever including but not limited to any and all related costs, expenses, and/or damages which may occur or may be attributed in any way from, or are in any way connected with this agreement unless and to the extent that they have been finally and judicially determined to have been caused by gross negligence or willful default..





363 W. Big Beaver, Suit
Troy, Michigan
Phone: 248-246
Fax: 877-693
E-mail: info@SB-BusinessPartner
www.SB-BusinessPartner

### Counterparts

This Agreement may be signed in one or more counterparts and by one or more parties on separate counterparts, each of which will be deemed to be an original of this Agreement and all of which, when taken together, will be deemed to constitute the same agreement. The delivery by fax or as a portable document file attachment to an e-mail of signed counterparts of this Agreement or of any document in connection with or pursuant to this Agreement will constitute effective execution and delivery of this Agreement or such document and may be used in lieu of an original for all purposes in the same manner as if the party who received the fax or e-mail had received the original, signed Agreement or document.

### Dispute Resolution

In the case where we encounter disputes irresolvable through negotiations, we agree to seek arbitration via the American Association of Arbitration; where the award of the arbitration shall be legally binding and final. The venue of the arbitration shall be in the State of Michigan.

### Governing Law

This Agreement shall be construed and governed by the laws of the State of Michigan, United States of America.

### This Proposal

The above contains the entirety of our engagement proposal. If these arrangements are acceptable, please sign this letter and return it to us.

Stonebridge Equity LLC
Stonebridge Business Partners (dba)

China Automotive Systems, Inc. (CAS)

Signature

Signature

Name: Rex R. Struble

Name: Mr. Hanlin Chen

Title: Managing Partner

Title: Chairman, CAS

Date: 4/1/08 , 2008

Date: 5-12- , 2008

## STATE OF MICHIGAN
## IN PRIVATE ARBITRATION

**STONEBRIDGE EQUITY LLC,**
**d/b/a STONEBRIDGE BUSINESS**
**PARTNERS,** a Michigan limited
liability company,

       Claimant,

vs.

**CHINA AUTOMOTIVE SYSTEMS, INC.,**
a Delaware corporation,

       Respondent.

Gene J. Esshaki
Arbitrator

_____/

Randall J. Gillary (P 29905)
Kevin P. Albus (P 53668)
RANDALL J. GILLARY, P.C.
Attorneys for Claimant
201 W. Big Beaver Road, Suite 1020
Troy, Michigan  48084
(248) 528-0440

Mark V. Heusel (P 47528)
DICKINSON WRIGHT, PLLC
Attorneys for Respondent
301 East Liberty Street, Suite 500
Ann Arbor, Michigan 48104
(734) 623-1908

_____/

## FINAL AWARD

On December 28, 2010, the undersigned issued his **PARTIAL AWARD NUMBER ONE** in the above-referenced private arbitration.  A copy of that Award is incorporated herein by this reference.

In Partial Award Number One, the undersigned indicated that it would not be possible to calculate the commission amount found due from Respondent, China Automotive Systems, Inc. ("CAS"), to Claimant, Stonebridge Equity LLC, d/b/a Stonebridge Business Partners ("SBP"), for the excess price success fee awarded in Partial Award Number One since there was

Exhibit B

insufficient evidence presented to make the calculation. Further, because the penalty claimed under the manufacturers representative statute is based, in part, on the Award, the amount of the commissions due pursuant to the Award had to be established prior to ruling upon the penalty claim. Finally, to the extent legal fees were being claimed pursuant to the manufacturers representative statute or the general terms of the Agreement to Arbitrate, the amount of the Final Award was relevant to the claim for an award of fees.

<u>**CURRENT ISSUES**</u>

The following current issues have been identified in communications between the parties and reviewed in a conference call conducted on January 31, 2011 with counsel for the parties:

1. <u>Identification of Parts for Which Price Enhancement Commission is Due</u>. In Partial Award Number One dated December 28, 2010, the undersigned identified that pursuant to Section 2.B. of the Engagement Agreement executed between the parties, SBP was entitled a success fee commission equal to $0.744 on each part sold or to be sold by CAS to Chrysler Corporation ("Chrysler") for the J/K parts contracts. CAS has requested clarification that the commission referenced in Partial Award Number One was limited to purchase orders for the large wheel base and small wheel base steering gears covering right hand gears and left hand gears for each vehicle. CAS has submitted that the proper description of the parts that are subject to the price enhancement commission are as follows:

| Part Description | Original Part Number | Revised Part Number |
|---|---|---|
| LWB-Right Hand Gear | 52060188AE | 52126349AA |
| LWB-Left Hand Gear | 52060172AE | 52126348AA |
| SWB-Right Hand Gear | 52052898AD | 68052898AA |
| SWB-Left Hand Gear | 52059897AD | 68052897AA |

Exhibit B

CAS has asserted that it currently supplies more than steering gear parts under the J/K contracts with Chrysler and that it was not the intent of the Award to award price enhancement commissions to CAS for parts being shipped to Chrysler that were not specifically referenced in the testimony presented at the hearings. This position is correct.

SBP objects to limiting the description of the parts for which price enhancement commissions are due to either original part numbers or revised part numbers to the extent it can be later argued that if a part number changes, SBP is not entitled to continued commissions.

The Partial Award of the undersigned grants to SBP price enhancement commissions equal to $0.744 on the parts described above having the original part numbers and the revised part numbers set forth above. The Award specifically does not address what will occur with respect to such price enhancement commissions in the event part numbers are again revised or the customer elects to utilize the original parts ordered for other vehicles in its lines. Such issues will have to be addressed in a future arbitration proceeding should they in fact arise. By the same token, the Award is not meant to provide SBP with price enhancement commissions for anything other than the parts described above containing the original part numbers and the revised part numbers currently being acquired by Chrysler from CAS.

2. <u>Price Fluctuation</u>. The Partial Award Number One dated December 28, 2010 provides that SBP shall be entitled to a success fee commission equal to $0.744 on each part sold or to be sold by CAS to Chrysler for the J/K parts contracts. Section 1 immediately above clarifies the extent of this Award. CAS has subsequently advised the undersigned that Chrysler is currently demanding a price reduction equal to 2% for calendar year 2011 production requirements. CAS asserts it is entitled to calculate the success fee price enhancement

commission based upon the difference between the target price and the price of the part actually paid by Chrysler.

SBP asserts that the price enhancement success fee commission is either established at the date of issuance of the Final Award or is subject to adjustment, upwards or downwards, only after presentation of evidence concerning why the price was being altered to the customer. To resolve this issue, the undersigned must once again refer to the Engagement Agreement: Business Development Services executed between the parties and dated April 1, 2008.

The price enhancement success fee contained in the parties' Agreement is set forth in Section 2.B. Based upon the language set forth in this section, the undersigned concludes that the price enhancement success fee is fixed at 40% of the amount by which the actual price set forth in the original purchase order exceeds the target price agreed upon between SBP and CAS. The success fee is to remain in effect for the life of products (the gears identified above) supplied to the customer and the undersigned specifically finds it is not subject to fluctuation based upon an increase or decrease in actual selling price that may subsequently occur. Any subsequent price reduction or price increase obtained in the sale price of the products referenced in Section 1 above is not to be passed along to SBP through either an increase or decrease in SBP's commission of $0.744 per part.

3. <u>Commissions Due at December 31, 2010</u>. The parties are in agreement that as of December 31, 2010, CAS sold to Chrysler 197,902 parts for which, under Partial Award Number One, SBP is entitled to receive a commission equal to $0.744 per part. Accordingly, as of December 31, 2010, SBP is entitled to a commission for the price enhancement success fee from CAS for the parts at issue totaling $147,239.09.

Exhibit B

4.   Penalty.   SBP asserts a right to be awarded the penalty required under the Michigan manufacturers representative statute, MCL 600.2961.  The penalty established under this statute is equal to two times the commissions due or $100,000, whichever is less.

The undersigned finds that SBP is entitled to relief under the penalty provisions of the Michigan manufacturers representative statute in the amount of $100,000, in addition to the commission awarded above.

5.   Legal Fees.   SBP has made demand for an award of legal fees under both the Michigan Sales Representative Commission Act and the terms of the parties' Arbitration Agreement dated September 21, 2009.

The undersigned finds that SBP is not a prevailing party as defined under the terms of the Michigan Sales Representative Commission Act, MCL 600.2961.  Accordingly, SBP is not entitled to an award of legal fees and costs under the statute.

The Arbitration Agreement executed between the parties on September 21, 2009 provides in Section 5.2 as follows:

> **5.2**   **Attorney's Fees and Costs**:  The parties agree that each party shall bear its own costs and attorney's fees, if any, during the course of the arbitration, including costs and fees to the arbitrator.  The arbitrator shall have the authority to award reasonable attorney's fees and costs (including arbitration fees) to either party.

Under the provisions of the Arbitration Agreement governing attorney's fees, the undersigned has the authority to award fees in his sole discretion.  There can be no doubt that while SBP did not succeed on every claim set forth in its Complaint and, thus, was not a prevailing party under the Michigan Sales Representative Commission Act, SBP was a prevailing party in these proceedings as that term is used in general litigation.  Accordingly, the undersigned is exercising the discretion bestowed upon him under the terms of the Arbitration

Exhibit B

Agreement to award legal fees. SBP, in addition to the excess commission fee awarded in Section 3, above and the penalty fee awarded in Section 4, above, shall recover from CAS total legal fees in the amount of $70,000.

      6.    <u>Costs</u>. In the Partial Award, the undersigned ruled that each party shall bear their respective costs incurred in connection with these proceedings. That award is confirmed.

      6.    <u>Interest</u>. This Award shall carry interest from the date of filing the original Complaint at the simple interest rate of 4% per annum.

<b><u>FINAL AWARD</u></b>

This Award, together with Partial Award Number One dated December 28, 2010, shall constitute the full and Final Award of the undersigned.

Dated: February ___4___, 2010                                     
                                         Gene J. Esshaki, Arbitrator

<b><u>CONFIRMATION</u></b>

The undersigned, the duly appointed Arbitrator in the above-referenced private arbitration, does hereby confirm that the foregoing, together with Partial Award Number One dated December 28, 2010, constitute his true, lawful, full and Final Award in these proceedings.

Dated: February ___4___, 2010                                       
                                         Gene J. Esshaki, Arbitrator

Exhibit B

## STATE OF MICHIGAN
## PRIVATE ARBITRATION
## ON APPEAL

**STONEBRIDGE EQUITY LLC, d/b/a**
**STONEBRIDGE BUSINESS PARTNERS**,
a Michigan limited liability company,

   Claimant-Appellee,

**vs.**

**CHINA AUTOMOTIVE SYSTEMS, INC.,**
a Delaware corporation,

   Respondent-Appellant.

**Pamela R. Harwood**
**Arbitrator on Appeal**

_____/

## ARBITRATOR'S OPINION ON APPEAL

Exhibit C

## I. SUMMARY OF THE CASE

This Arbitration and the appeal from the Arbitrator's Final Award dated February 4, 2010 arises from an Engagement Agreement: Business Development Services, dated April 1, 2008 between Claimant Stonebridge Equity Partners LLC d/b/a Stonebridge Business Partners (SBP) and Respondent China Automotive Systems, Inc. (CAS). (Appellant's Brief, Exhibit 3).

### A. PROCEDURAL HISTORY

SBP filed an action in the United States District Court for the Eastern District of Michigan, Case No. 2:09-cv-11541. CAS filed a Motion to Dismiss based upon an arbitration clause contained in the Agreement. The parties executed an Arbitration Agreement and the District Court action was dismissed.

An Arbitration Hearing was conducted on November 30, 2010 before Arbitrator Gene J. Esshaki. SBP called Dr. Haimian Cai of CAS and Rex Struble of SBP. CAS called Dr. Cai in its case in chief.

Following the conclusion of the Hearing, the parties submitted post-hearing statements.

Mr. Esshaki issued his Partial Award Number One on December 28, 2010. He issued his Final Award on February 4, 2011, making the following award in favor of SBP:

- Commissions Due as of December 31, 2010: $147,239.09
- Penalty Under MCL 600.2961: $100,000.00
- Legal Fees: $70,000.00

Exhibit C

- Interest at the rate of 4% per annum from the date of the filing of the original Complaint and

- Each party to bear their own costs.

CAS has appealed this award, as provided under the Arbitration Agreement.

## B.   THE ARBITRATION AGREEMENT

The Arbitration Agreement entered into by the parties includes a provision allowing for the appeal of the "legal conclusions and other findings made by the hearing arbitrator" as follows:

> 5.3 <u>Finality of Award</u>: Subject to the right to appeal as set forth in this Section, any award by the arbitrator (or the appeal arbitrator, if applicable) shall be final and conclusive upon the parties and a judgment may be entered in the Circuit Court or United States District Court having jurisdiction for the forum. After the entry of an arbitral award, either party shall have thirty (30) days after it receives notice of the award to fully comply with the award; a judgment may not be entered to enforce the award until the parties have had an opportunity to comply with the arbitral award according to this provision.

> 5.3.1 Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, but only if notice of appeal is served by the appealing party on the opposing party within 30 days after the date of the decision of the hearing arbitrator is mailed to the parties. Service shall be deemed completed upon receipt of the notice of appeal by the opposing party. The hearing arbitrator's award shall therefore not become final and binding until this period has lapsed without a notice of appeal being served.

> 5.3.2 If a notice of appeal is filed, then the parties shall appoint an arbitrator in the same manner as described in Section II to serve as the appeal arbitrator. The appeal arbitrator may not take new evidence, but shall consider briefs and oral argument of counsel, as well as the written record of the hearing (if one exists). The standard of review shall be the same as if the matter were appealed to a

-2-

Exhibit C

Michigan appellate court. The appeal arbitrator shall render
its decision and ruling in writing within 30 days of the close
of of oral arguments. The appeal arbitrator's ruling shall be final
and binding and subject to reversal only as allowed by the
standards set forth in the Federal Arbitration Act.

### C.   THE ARBITRATION AWARDS

The dispute on appeal concerns the interpretation of the April 1, 2008

Agreement between SBP and CAS pertaining to a contract awarded to CAS by Chrysler

for certain parts sold by CAS to Chrysler for the J/K vehicle, commonly known as the

Jeep Wrangler.  Specifically, the Arbitrator found that CAS owed "Success Fees" to

SBP based upon its efforts in negotiating a price in excess of an agreed upon "target

price."  CAS argues on appeal that the Arbitrator erred in awarding and calculating

these "Success Fees" for reasons discussed in detail below.

The first paragraph in the Agreement states:

> In follow up to our recent meeting in Troy Michigan, this
> engagement agreement ("Agreement") is designed to focus
> on providing CAS with business development services to
> help you identify and pursue new customers and strategic
> partners in the automotive and commercial truck markets in
> North America and Europe.

SBP's compensation for services provided under the Agreement consisted of a

monthly retainer of $5,000 for six months and the payment of "Success Fees", which

are defined as follows:

> 2. Success Fee:

> A.   If CAS successfully signs a purchase order which is
> procured by SBP, solicited by SBP or is pursued by
> SBP during the term of this engagement, CAS agrees
> to pay SBP 5% of the gross margin which the sale
> creates for CAS. (whereas gross margin is defined as
> the difference between the target price for that
> specific product and the actual direct manufactured

-3-

Exhibit C

      cost of goods sold; and, whereas target price shall be
      as agreed between SBP and CAS at the time at
      which the opportunity is identified and/or pursued by
      SBP) CAS has the sole discretion and right to reject
      any orders from any customers. Plus;

B.  If the actual price awarded through the procurement,
      solicitation and/or effort of SBP is over the target
      price as agreed between CAS and SBP, then CAS
      also agrees to pay SBP 40% of the excessive amount
      which is defined as the difference between the actual
      price and the target price. For the purposes of this
      Section 2 A and B, success fees shall remain in effect
      for the life of product supply to the customer. CAS
      and SBP shall agree to a target price for each project
      at the time each business opportunity is identified.
      Plus;

C.  If CAS successfully closes a business transaction
      other than direct customer sales such as strategic
      partnerships, joint ventures, technology licensing, or
      any other form of business combinations or value
      transfer whereby SBP identified the opportunity
      and/or guided the transactional process through
      necessary strategic' advisory and consulting services,
      then-CAS agrees to also pay SBP a success fee
      amount equal to 1.5% of the transaction value of such
      business transaction or a minimum success fee equal
      to $50,000 whichever is greater.

D.  Payment due under Section A and B shall be the 30th
      day after the payments are collected from the
      customers. Payment due under Section C shall be
      the 30th day after the closing of the transaction.

   The arbitration hearing concerned SBP's claims for Success Fees under

Paragraphs 2.A and 2.B with respect to Chrysler J/K and D/J vehicles and under

Paragraph 2.C with respect to a joint venture between CAS and another company, De

Amertek.  The Hearing Arbitrator concluded that SBP was entitled to Success Fees

under Paragraph 2.B for J/K vehicle parts.  This award is the only matter at issue in this

appeal.

Exhibit C

The Hearing Arbitrator concluded that the Agreement was ambiguous as to whether Paragraph 2.B applied only to new customers of CAS or whether it applied to existing customers from whom purchase orders were issued in which the agreed upon target price was exceeded by the actual price.  After determining the existence of such an ambiguity, the Hearing Arbitrator considered extrinsic evidence, specifically early drafts of the Agreement in which the language clearly limited the payment of Success Fees based on pricing in excess of a target price to new customer sales.  He concluded that because the Agreement as executed by the parties did not clearly limit the payment of "excessive pricing" Success Fees to sales to new customers, that it was reasonable to assume that the parties did not intend to so limit Paragraph 2.B.

The Arbitrator concluded that the parties agreed upon a target price of $120.00 per part for the J/K parts.  He concluded that the Chrysler purchase orders establish that the final awarded price of the these parts was $121.86.  SBP therefore was entitled to commission of $0.744 on all parts sold by CAS to Chrysler.  (($121.86 - $120.00) x 0.40 = $0.744).

## II.   STANDARD OF REVIEW

The parties do not agree as to the standard of review to be undertaken by the Appeal Arbitrator.  Appellant argues that the standard is that of an appellate court reviewing the judgment of a trial court.  It argues that questions of contract interpretation are questions of law that are subject to *de novo* review and that findings of fact are reviewed for clear error.

-5-

Exhibit C

Appellee, on the other hand, argues that the standard of review is the standard for vacation of an arbitration award under the Michigan Arbitration Act.  MCL 600.5021 and MCR 3.602(J)(2).

Consideration of the language of the Arbitration Agreement pertaining to the appeal of an award causes the Appeal Arbitrator to conclude that the standard of review is that to be applied by a Michigan appellate court reviewing a trial court judgment.  The Arbitration Agreement states in pertinent part:

> 5.3.1 Legal conclusions and other findings made by the hearing arbitrator as described above may be appealed to the appeal arbitrator, ...
>
> 5.3.2 ... The standard of review shall be the same as if the matter were appealed to a Michigan appellate court. ... The appeal arbitrator's ruling shall be final and binding and subject to reversal only as allowed by the standards set forth in the Federal Arbitration Act.

Thus, the parties agreed that the legal conclusions and other findings made by the Hearing Arbitrator are reviewable subject to the same standards as would be applied by a Michigan appellate court.  Moreover, the parties reference to the Appeal Arbitrator's ruling being subject to reversal under the standards of the Federal Arbitration Act certainly mitigates against applying the standard of review under the Michigan Arbitration Act.

Michigan appellate courts review findings of fact under a clearly erroneous standard.  *Henry v Dow Chem Co* 484 Mich 483, 495 (2009).  "A finding is 'clearly erroneous' if, after reviewing the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made."  *Federated Publications v City of Lansing*, 467 Mich 98, 107 (2002).

-6-

Exhibit C

The construction of a contract presents a question of law that is subject to *de novo* review. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463 (2003). Whether a contract is ambiguous also is subject to *de novo* review, *DaimlerChrysler Corp v G Tech Pro Staffing, Inc*, 260 Mich App 183, 185 (2003), as is whether extrinsic evidence should be used to interpret the contract. *In re Kramek Estate*, 268 Mich App 565, 573 (2005).

Once a contract is found to be ambiguous, however, the meaning of the contract becomes a question of fact, *Klapp, supra,* at 469, and is subject to review under the clear error standard.

## III.  CLAIMS OF ERROR

Appellant makes the following six claims of error by the Hearing Arbitrator:

- The Arbitrator improperly used extrinsic evidence to determine whether the Engagement Agreement is ambiguous;

- Although the Engagement Agreement allows SBP to recover a success fee only for purchase orders from new customers, the Arbitrator's award is based on sales to an existing customer with which CAS did business before its agreement with SBP;

- Even if it were proper to consider extrinsic evidence in construing the Engagement Agreement, the evidence submitted at the hearing below established that SBP is not entitled to recover any success fees;

- The Arbitrator's construction of the success fee clause and "new customer" requirement is one that neither party advanced and that is contrary to the plain text of the Engagement Agreement;

- The Arbitrator mistakenly concluded that the parties had agreed on a "target price," one of the critical elements in determining whether SBP is entitled to a success fee; and

- The Arbitrator erroneously determined SBP's success fee based on a single amendment to a purchase order rather than the "actual" price, as required by the parties' Engagement Agreement.

Exhibit C

## IV.    ANALYSIS

### A.    WHETHER THE HEARING ARBITRATOR IMPROPERLY USED EXTRINSIC EVIDENCE TO DETERMINE WHETHER THE AGREEMENT IS AMBIGUOUS

Initially, Appellant argues that the Hearing Arbitrator used extrinsic evidence to create an ambiguity in the Agreement by looking to the earlier drafts of the Agreement. However, the Hearing Arbitrator states in Partial Award Number One at pages 9-10 that the conclusion that the Agreement is ambiguous is based upon the language of the contract itself, not based upon the consideration of extrinsic evidence:

> In reviewing Exhibit 8, I find, as a matter of law, that the contract is ambiguous. This ambiguity arises for several reasons. Initially, the introductory paragraph of the contract limits activities of SBP to pursuing new customers and strategic partners. That provision, however, carried forward in Section 2. A. governing a commission for success fees, on sales procured, solicited or pursued by SBP. Further, I find an ambiguity exists in the contract between the language of Section 2. A. and 2. B. While 2. A. is limited to purchase orders procured, solicited or pursued by SBP during the term of the engagement, Section 2. B. indicates would be entitled to a success fee for procurement, solicitation "and/or effort" of SBP, The language of Section 2. B. is dramatically different than the language of Section 2. A. in that 2. A. clearly identifies that the purchase order is to be procured, solicited or pursued by SBP, while the language of 2. B. indicates success compensation can be awarded for improving the final price of a contract that was procured, solicited or resulted from any effort of SBP.

It is clear that the Hearing Arbitrator concluded that the Agreement is ambiguous prior to giving consideration to extrinsic evidence, such as the earlier drafts of the Agreement.

Further, although parol evidence may not be permitted to contradict the terms of a written contract, extrinsic evidence may be used to prove the existence of an

Exhibit C

ambiguity in a contract. As set forth in *Goodwin, Inc v Coe Pontiac, Inc*, 392 Mich 195, 209-210, 220 NW2d 664 (1974), Michigan law recognizes the admission of extrinsic evidence as follows:

> From these cases we derive the following rules to decide this case:
>
> 1) Where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of ambiguity.
>
> 2) Where ambiguity may exist in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties.
>
> 3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract.

Some Michigan courts have opined that *Goodwin* has been implicitly overruled by *Union Oil Co of California v Newton*, 397 Mich 486, 245 NW2d 11 (1976). See, for example, *NAG Enterprises, Inc v All State Industries, Inc*, 85 Mich App 194, 270 NW2d 738 (1978) and *Michigan National Bank of Detroit v Holland-Dozier-Holland*, 73 Mich. App. 12, 250 N.W.2d 532 (1976). However, as the Sixth Circuit noted in *C.E. Hale Corp v Butler Polyment, Inc,* 1989 WL 16969 (6th Cir.), *Union Oil* merely clarified that when extrinsic evidence is introduced for the purpose of proving the existence of an ambiguity, the evidence is not admissible to prove that the intent of the parties was inconsistent with the express written terms of the contract.

### B.   WHETHER THE ARBITRATOR ERRED IN AWARDING SUCCESS FEES TO SPB PERTAINING TO THE NEGOTIATION OF PRICE OF SALES TO AN EXISTING CUSTOMER

Appellant argues that even if the Agreement is ambiguous, the extrinsic evidence demonstrates that Appellee is only entitled to Success Fees for new customers because of the introductory paragraph in which it states that the Agreement "is

-9-

Exhibit C

designed to <u>focus</u> on providing CAS with business development services to help you <u>identify and pursue new customers</u> and strategic partners ..." (Emphasis added). Appellant contends that the Hearing Arbitrator erred in concluding that this language did not limit Success Fees under both Paragraphs 2.A and 2.B to business generated from new customers.

Appellee, on the other hand, contends that the Agreement contains no language that limits either Success Fees under 2.A or 2.B to purchase orders from new customers. It argues that there is nothing in either Paragraph 2.A or 2.B that limits the obligation to pay success fees to purchase orders with new customers, as opposed to existing customers.

The Hearing Arbitrator concluded that the Agreement was ambiguous for the reasons outlined above. He cited earlier drafts of the Agreement in which the Success Fees were set forth in a single paragraph that specifically referenced payment of Success Fees for purchase orders obtained from "new customers." (Appellant's Brief Tab 15). When the final Agreement was executed, this reference was removed. From this modification, the Hearing Arbitrator apparently inferred that the parties did not intend to limit Success Fees to purchase orders obtained by new customers.

Other evidence appears in the record that was not cited by the Arbitrator as extrinsic evidence in support of his finding that the Agreement calls for Appellee to provide services other than identifying and pursuing new customers. This includes the payment of a monthly retainer of $5,000.00 that was invoiced as a consulting fee; the argument raised in Appellant's Brief that the assistance rendered by Appellee in negotiating a price with Chrysler was a service provided under the Agreement; and the very fact that Appellant requested Appellee to assist it in the negotiation of the price.

Exhibit C

Appellant, on the one hand contends that all services provided under the Agreement were intended to be related to the identification and pursuit of new customers, but on the other hand contends that Appellee's services in providing assistance with the negotiation of price with Chrysler was compensated under the retainer provisions of the very same contract.

The parties also disagree over the term "focus" in the introductory paragraph. Appellant contends that the term "focus" means "to concentrate", which in turn means to "bring all efforts ... to bear on one thing or activity." Appellee argues that "focus" is "a center of activity. The Appeal Arbitrator agrees that "focus", as used in the Agreement is a verb, which means to concentrate. However, while the "focus" of the Agreement may be on the pursuit of new customers, this is not the exclusive objective of the contract, as evidenced by the parties' own conduct in seeking and providing assistance with respect to negotiating a price with Chrysler.

The Hearing Arbitrator did not err in concluding that the Success Fees in Paragraph 2.B are applicable to the negotiation of price with an existing customer. Nothing in Paragraph 2.B sets forth such a limitation.

### C.   WHETHER THE EVIDENCE SUBMITTED AT THE HEARING BELOW ESTABLISHED THAT SBP IS ENTITLED TO SUCCESS FEES

As set forth above, the standard of review with respect to issues of fact is whether the Hearing Arbitrator's findings were clearly erroneous.

The Hearing Arbitrator considered that the draft Agreement dated January 7, 2008 specifically limited Success Fees to new customers:

> IF CAS successfully signs a purchase order for new customer sales whereby SBP identified the opportunity or in any way enabled the opportunity through providing strategic

-11-

Exhibit C

> advisory services, THEN CAS agrees to pay SPB a success
> fee ...

(Appellant's Brief, Exhibit 15).

This limitation was not contained in the final Agreement executed by the parties. The Appeal Arbitrator cannot state that the Hearing Arbitrator's interpretation of the extrinsic evidence was clearly erroneous. The elimination of language from the Success Fees provision limiting that provision to purchase orders to new customers only in the final signed version of the Agreement supports the Hearing Arbitrator's interpretation of the Agreement.

### D. WHETHER THE HEARING ARBITRATOR ERRED IN CONCLUDING THAT SBP IS ENTITLED TO SUCCESS FEES UNDER 2.B WHEN IT WAS NOT ENTITLED TO AN AWARD UNDER 2.A

Appellant argues that because the Hearing Arbitrator found that Respondent was not entitled to an award of success fees under Paragraph 2.A, that it cannot be entitled to an award under 2.B because of the following language:

> If the actual price awarded through the procurement, solicitation and/or effort of SBP is over the target price as agreed between CAS and SBP, **then CAS also agrees to pay**

(Emphasis added).

Appellant argues that if no success fees are awarded under Paragraph 2.A, then it cannot "also agree to pay" success fees under Paragraph 2.B. However, success fees under 2.C also contains the same clause with respect to success fees earned for identifying other transactions such as partnerships, joint ventures or technology licensing. It is clear that these transactions are in no way dependent on the earning of a success fee under Paragraph 2.A.

-12-

Exhibit C

The Hearing Arbitrator did not err when he determined that the payment of success fees under Paragraph 2.B are not dependent on the award of Success Fees under Paragraph 2.A.

The Hearing Arbitrator's finding that the actual price awarded to Appellant by Chrysler for the J/K parts was awarded through the effort of Respondent is a finding of fact.  This finding was not clearly erroneous as there is sufficient support in the testimony of Rex Struble that Respondent was consulted by Appellant with respect to pricing strategy and that Respondent provided assistance to Appellant with respect to this issue.  Even Appellant's representative, Dr. Haimian Cai, admitted that he asked Mr. Struble to consult with him on the Chrysler contract.  (Transcript at 217-218).  Thus, the Appeal Arbitrator cannot conclude that this finding was clearly erroneous.

### E.   WHETHER THE ARBITRATOR COMMITTED CLEAR ERROR IN CONCLUDING THAT THE PARTIES HAD AGREED ON A "TARGET PRICE"

The question of whether the parties agreed on a "target price" of $120.00 per part for the J/K parts is a finding of fact that will be not be disturbed on appeal in the absence of a clear error having been committed by the Hearing Arbitrator.

There is testimony from Mr. Struble concerning a conversation with Dr. Cai in which they agreed to a $120.00 target price, although it is not clear that the word "target price" was used in that conversation.  (Transcript, pp 81-84; 163-167).  In addition, Appellant's Brief Exhibit 17, is an e-mail dated September 8, 2008 confirming a "Goal of New Price: $120.00 minimum".

Again, this is an issue of fact and there is support in the record for the Hearing Arbitrator's finding.  Accordingly, this is not clear error.

-13-

Exhibit C

**F.  WHETHER THE HEARING ARBITRATOR ERRED IN FAILING TO ACCOUNT FOR PRICE FLUCTUATION IN THE FINAL AWARD**

With respect to success fees under Paragraph 2.B, payable if the actual price awarded exceeds the target price, they are determined based upon the "excessive amount", which is defined as "the difference between the actual price and the target price." This provision also states that these fees shall remain in effect "for the life of product". "Actual price" is not defined in the Agreement.

Appellant argues that the Hearing Arbitrator erred in concluding that the actual price is determined from the October 2010 Purchase Order and is not subject to fluctuation, for example should Chrysler impose a 2% price reduction as is referenced in the Hearing Arbitrator's Final Award.  In short, Appellant argues that "actual" means "existing in fact".

Respondent argues that the "actual price awarded" is determined as of the date of the determination of the price, regardless of any subsequent price fluctuations, either positive or negative.

This is a question of contract interpretation which is subject to *de novo* review.

Words in a contract are given their plain, ordinary everyday meaning.  *Wilkie v Auto-Owners Ins Co,* 469 Mich 41 (2003).  "Actual" means "a: existing in act and not merely potentially b : existing in fact or reality."  Merriam-Webster's Collegiate Dictionary.

The issue is whether the "actual price awarded" is the price that CAS negotiated with Chrysler through Respondent's efforts or the price that Chrysler actually agrees to pay.

-14-

Exhibit C

The Appeal Arbitrator concludes that the term "actual price" means the price that Chrysler in fact paid to CAS.  In the event that Chrysler unilaterally imposes a price reduction in the future or CAS otherwise negotiates a new price with Chrysler, the price that Chrysler agrees to pay shall be the "actual price awarded" for the purpose of determining success fees under Paragraph 2.B.

## V.   CONCLUSION

In conclusion, the Hearing Arbitrator's Final Award is reversed as to the conclusion that the award of success fees at a rate of $0.744 per part under Paragraph 2.B of the Agreement is constant for the life of the product.  In all other respects, the Hearing Arbitrator's Partial Award Number One and Final Award are affirmed.

Dated:       June 23, 2011

Pamela R. Harwood
Appeal Arbitrator

-15-

Exhibit C